**CASE NO. 23-3180**
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**
_____

GARY MCNEAL

Plaintiff-Appellant

v.

CITY OF BLUE ASH, ET. AL.

Defendant-Appellee

_____

On Appeal from the United States District Court
for the Southern District of Ohio, Eastern Division

_____

**BRIEF OF APPELLEES SCOTT NOEL AND DAVID WALTZ**
_____

/s/ Kirk M. Wall
Kirk M. Wall (#0061642)
H. Devon Collins (#0095657)
DINSMORE & SHOHL LLP
191 W. Nationwide Blvd., Suite 200
Columbus, Ohio  43215
Phone: (614) 628-6880
Fax: (614) 628-6890
Email: kirk.wall@dinsmore.com
          devon.collins@dinsmore.com

*Counsel for Appellees Scott Noel (individual
capacity) and David Waltz (individual capacity)*

## <u>DISCLOSURE OF CORPORATE AFFILIATIONS<br>AND FINANCIAL INTEREST</u>

Pursuant to 6th Cir. R. 26.1, Appellees David Waltz and Scott Noel in their individual capacities ("Individual Appellees") make the following disclosure:

> Individual Appellees are not subsidiaries or affiliates of a publicly owned corporation. There is no publicly owned corporation, not a party to the appeal, which has a financial interest in the outcome of this appeal.

# **TABLE OF CONTENTS**

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL
INTEREST ................................................................................................ i

TABLE OF AUTHORITIES ................................................................... iv

REQUEST FOR ORAL ARGUMENT ....................................................1

JURISDICTIONAL STATEMENT ..........................................................2

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................2

STATEMENT OF THE CASE.................................................................3

STATEMENT OF FACTS .......................................................................5

A.    McNeal Had A History Of Documented Performance And
      Discipline Issues. ........................................................................5

B.    The Frisch's Dispatch Call And The Subsequent Internal Investigation. .......6

C.    The Department's Internal Investigation Determined McNeal
      Violated Multiple Policies. ..........................................................9

D.    The Blue Ash Police Department Terminates McNeal. ...............13

E.    McNeal Was Disciplined Consistent With Other Employees
      Who Violated Policy.....................................................................13

SUMMARY OF THE ARGUMENT .....................................................15

ARGUMENT ..........................................................................................16

    I.     STANDARD OF REVIEW...............................................16

    II.    THE DISTRICT COURT PROPERLY HELD THAT MCNEAL'S
           CLAIM UNDER O.R.C. § 4112.02(A) AGAINST APPELLEES
           WAS TIME BARRED. ......................................................17

    III.   MCNEAL'S CLAIM AGAINST INDIVIDUAL APPELLEES
           ARE BARRED BY STATUTORY IMMUNITY...............22

IV.    MCNEAL ABANDONED ALL CLAIMS ASSERTED
       AGAINST APPELLEE DAVID WALTZ. ...........................................24

V.     INDIVIDUAL APPELLEES ARE ALSO ENTITLED
       TO SUMMARY JUDGMENT ON THE MERITS OF
       MCNEAL'S CLAIM. ...........................................................................26

  A.   The District Court Properly Held That McNeal Never
       Established A Prima Facie Claim Of Age Discrimination. ................26

  B.   McNeal Was Not Treated Less Favorably Than
       Younger Employees. .........................................................................28

  C.   Even If McNeal Established His *Prima Facie* Case He Failed To
       Establish Pretext. ..............................................................................35

  D.   McNeal Relies On Inadmissible Testimony That Cannot
       Establish An Issue Of Material Fact. ................................................36

  1.   William Fritts Must Be Disregarded. ..................................................38

  2.   Beth Roach Must Be Disregarded. ......................................................41

  3.   Todd Stewart Must Be Disregarded. ...................................................43

  4.   Kenneth Schrand Must Be Disregarded. .............................................45

  5.   Sgt. Edward Charron Must Be Disregarded. ........................................49

  E.   Individual Appellees Are Entitled To The Honest Belief Rule. ...........54

CONCLUSION ........................................................................................56

CERTIFICATE OF COMPLIANCE ......................................................57

CERTIFICATE OF SERVICE ...............................................................58

APPELLEE'S DESIGNATION OF DISTRICT COURT DOCUMENTS ...........59

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ahern v. Ameritech Corp.*, 137 Ohio App. 3d 754 N.E.2d 1184, 1202 (Ohio Ct. App. 2000)..................................................................................................19

*Arendale v. City of Memphis*, 519 F.3d 587 (6th Cir. 2008) ...................................27

*Barnett v. Pa Consulting Group, Inc.,* 35 F. Supp. 3d 11 (6th Cir. 2014)...............37

*Brown v. Metro. Gov't of Nashville & Davidson Cty.*, 722 F. App'x 520 (6th Cir. 2018) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998)) ..............................................................................................................29

*Cannon v. Speedway LLC*, No. 16-CV-10257, 2017 U.S. Dist. LEXIS 148991, at *9 (E.D. Mich. Sep. 14, 2017)...............................................25

*Conrad v. U.S. Bank Nat'l Ass'n*, 391 F. Supp. 3d 780 (S.D. Ohio 2019) citing *Meyer*, 909 N.E.2d at 114 (citing *Leininger*, 875 N.E.2d at 43-44)..........21

*Dabney v. Christmas Tree Shops,* 958 F. Supp. 2d 439 (6th Cir. 2013) .......... 37, 41

*Dews v. A.B. Dick Co.*, 231 F.3d 1016 (6th Cir. 2000) ...........................................35

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998)...........28

*Estate of Quirk v. Comm'r*, 928 F.2d 751, 757 (6th Cir. 1991) ...............................21

*Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954 (4th Cir. 1996) .................54

*Garrett v. Brennan*, No. 5:18- CV-221-JMH-EBA, 2021 WL 1554893, at *6 (E.D. Ky. Apr. 20, 2021) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992)) ...............................................................................30

*Goodsite v. Norfolk Southern Ry.*, 573 Fed. Appx. 572 (6th Cir. Ohio 2014) ........27

*Hauser v. City of Dayton Police Dep't*, 2014-Ohio-3636, ¶ 15, 140 Ohio St. 3d 268, 17 N.E.3d 554, 559 ............................................................................ 22, 23

*Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921 (6th Cir. 1999)............................................................................................. 37, 54

*Jackson v. Int'l Fiber Corp.*, 395 F. App'x 275 (6th Cir. 2010) ............................28

*Jackson v. VHS Detroit Receiving Hosp.*, 814 F.3d 769 (6th Cir. 2016) ...............30

*Kathleen v. Cnty. of Del.*, No. 2:12-CV-00381, 2013 U.S. Dist.
 LEXIS 42794, at *11 (S.D. Ohio Mar. 26, 2013).................................20

*McNeil v. Sonoco Prods. Co.,* No. 16-6304, 2017 U.S. App.
 LEXIS 28180, at *6 (6th Cir. May 23, 2017) .......................................38

McNeil, No. 16-6304, 2017 U.S. App. LEXIS 28180, at *6...................................54

*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008) ..........................27

*Miller v. Potash Corp. of Saskatchewan*, 2010-Ohio-4291,
 ¶ 33; Fed. R. Civ. P. 56(c)(4) ................................................ 38, 53, 54

*Mitroff v. Xomox Corp.,* 797 F.2d 271 (6th Cir. 1986)................................... 37, 54

*Morris, Inc.*, 471 N.E.2d at 473 ...............................................................21

*Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St. 3d 241,
 2007-Ohio-4948, ¶ 8, 874 N.E.2d 1155, 1158.....................................22

*Parra v. City of Toledo*, No. 3:15-cv-1812, 2021 U.S. Dist.
 LEXIS 92940, at *11 (N.D. Ohio May 17, 2021) ................................34

*Raub v. Garwood*, No. 22210, 2005 WL 662932, at *3
 (Ohio Ct. App. Mar. 23, 2005)............................................................21

*Robinson v. Quicken Loans, LLC*, No. 21-1392, 2022 U.S. App.
 LEXIS 25983, at *19 (6th Cir. Sep. 14, 2022) ....................................30

*Saqr v. Univ. of Cin.*, No. 1:18-cv-542, 2021 U.S. Dist.
 LEXIS 243801, at *13 (S.D. Ohio Dec. 22, 2021)
 (citing *Gregg v. Ohio Dep't of Youth Servs.*, 661 F. Supp. 2d 842,
 859 (S.D. Ohio 2009))..........................................................................36

*Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003)...........35

*Swierkiewicz v. Sorema*, 534 U.S. 506 (2002).........................................................26

*Taglione v. Charter Communs., LLC*, 842 F. App'x at 992 n.6........................ 19, 20

v

*Tartt v. City of Clarksville*, 149 Fed. App'x 456 (6th Cir. 2005)............................30

*Tennial v. UPS*, 840 F.3d 292 (6th Cir. 2016).........................................................31

*Theodore v. Bridgestone Ams., LLC*, No. 5:15-CV-00698, 2015 U.S.
    Dist. LEXIS 103183, at *17 (N.D. Ohio Aug. 6, 2015) ......................................20

*Thompson v. City of Memphis*, 86 F. App'x 96 (6th Cir. 2004)..............................30

*Wathen v. General Electric Company*, 115 F.3d 400, (6th Cir. 1997)...................16

*Wheeler v. McKinley Enterprises*, 937 F.2d 1158 (6th Cir. Tenn. 1991)...............36

*Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509 (6th Cir. 2001) ............................19

**Rules**

Fed. R. Civ. P. 56(c)(4) .................................................................................. 17, 37

**Statutory Authorities**

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 ....................1

O.R.C. § 2744.03(A)(6) .................................................................................. passim

Ohio Rev. Code § 4112.02.............................................................................. passim

## <u>REQUEST FOR ORAL ARGUMENT</u>

Individual Appellees do not believe oral argument is necessary. While the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., and Ohio's anti-discrimination statute, Ohio Rev. Code § 4112.02 *et seq*. protect important employee rights, including the prohibition on age discrimination, Plaintiff Appellant McNeal ("McNeal" or "Appellant") does not present unique questions of law or fact for consideration by this Court. The factual record is well established and clearly demonstrates that McNeal has not demonstrated a *prima facie* case of age discrimination or that Individual Appellees' and Defendant-Appellee City of Blue Ash's ("City") (collectively "Appellees") proffered reason for his termination constituted pretext for discrimination as a matter of law. Based on the record, Appellees' Motions for Summary Judgment were properly granted. Oral argument will not aid the Court in its *de novo* review of the issues presented herein because the record is unambiguous and readily discerned. Thus, Individual Appellees submit oral argument is unnecessary.

1

## JURISDICTIONAL STATEMENT

McNeal's jurisdictional statement is complete and accurate.


## STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.    Whether, the District Court correctly granted Individual Appellees' Motion for Summary Judgment where it found as a matter of law that Appellant's claim under O.R.C. Chapter 4112 is time-barred.

II.   Whether, the District Court's decision granting Individual Appellees' Motion for Summary Judgment should also be affirmed on the alternative grounds that Individual Appellees are entitled to statutory immunity under O.R.C. § 2744.03(A)(6).

III.  Whether, the District Court's decision granting Individual Appellees' Motion for Summary Judgment should also be affirmed on the alternative grounds that Appellant abandoned any claim asserted against David Waltz by failing to respond in substance to his Motion for Summary Judgment.

IV.   Whether, in the alternative, the District Court correctly granted Appellees' Motions for Summary Judgment where it determined as a matter of law that Appellant failed to present sufficient evidence to establish a *prima facie* case of age discrimination?

V.    Whether, in the alternative, the District Court correctly granted Appellees' Motions for Summary Judgment where it found as a matter of law that Appellant did not proffer sufficient evidence to demonstrate pretext?

## STATEMENT OF THE CASE

McNeal maintains on appeal that he was terminated because of his age in violation of Ohio law. He was not.

On June 26, 2018, McNeal was primarily responsible for responding to a dispatch for a citizen who lay dying in a Frisch's bathroom. McNeal inexcusably delayed his response to the scene, when a matter of minutes could have made the difference between life and death. McNeal swore an oath to protect life, yet he deliberately and inexcusably delayed his response to the scene for one minute and fifty-four seconds. Had McNeal acted with urgency, he would have beaten the ambulance to the scene by almost two minutes. Leaving aside the seriousness of the call, McNeal's belated, inexplicable response to the dispatch also violated Blue Ash policies.

Following an internal investigation, McNeal was terminated because of his untimeliness and manner of response to the emergency dispatch, as well as several other policy violations uncovered during the investigation. Specifically, he did not respond to an emergency call; he violated traffic laws while not under lights and siren (Code 3); he was not familiar with department policies; he did not properly check and utilize Mobile Audio Video; and he was dishonest during an investigative interview, as well as his history of progressive discipline.

At the time of the June 26 incident, McNeal had been through several progressive discipline steps and had been suspended on three (3) separate occasions in the 12 months before he was terminated. McNeal grieved his termination through his Union representatives and lost his bid for reinstatement following arbitration.

Sgt. Edward Charron, McNeal's then direct supervisor and fellow union member, was also investigated for the timeliness and manner of his response to the same life-threatening emergency. Rather than continue, Charron retired immediately following the pre-disciplinary hearing in which the Chief of Police, Scott Noel, recommended his termination. Charron, who is younger than McNeal, had no prior discipline.

McNeal's state law claim of age discrimination against individual Appellees cannot proceed as a matter of law because: (1) it was not filed timely; (2) Individual Appellees are entitled to statutory immunity; and (3) McNeal abandoned any claim against David Waltz in response to his Motion for Summary Judgment.

Even if the Court were to reach the merits as to the Individual Appellees, McNeal has alleged no direct evidence of age discrimination. McNeal has no evidence that similarly situated younger patrol officers were treated more favorably. McNeal also has no evidence to rebut Appellees' legitimate, non-discriminatory reasons for termination. After all, McNeal disregarded his most important oath—

duty to protect life.  There are no genuine issues of material fact, and the District Court's decision should be upheld.

## STATEMENT OF FACTS

McNeal was hired as a patrol officer by the City of Blue Ash Police Department ("Department") in July, 2001 (R. 27, PageID 636). Over the course of McNeal's employment with the City of Blue Ash, the Police Department had four different Chiefs of Police and numerous other staffing changes within McNeal's chain of command. (R. 27, PageID 651). Hired within a year of McNeal, Appellee Scott Noel became Chief of Police in December of 2017. (*Id.* at PageID 660; R. 29-1 at PageID 1116-1118). As McNeal admits, changes in leadership can result in changes in the Department's enforcement priorities; Chief Noel wanted to hold everyone in his Department to a higher standard. (R. 27, PageID 653-654).

**A.    McNeal Had A History Of Documented Performance And Discipline Issues.**

From 2016 through 2018, McNeal received five official disciplinary actions; "[t]hose disciplinary actions include: one Documented Oral Reprimand, one Written Reprimand, and three separate suspensions without pay. These suspensions without pay include a one day suspension, a three day suspension, and a four day suspension." (R. 27-7, PageID 1000, 1035).

**B.      The Frisch's Dispatch Call And The Subsequent Internal Investigation.**

On June 26, 2018, McNeal did not respond with urgency after being dispatched to an emergency situation.   That response prompted an internal investigation of his policy violations and, ultimately, resulted in McNeal's termination, particularly when considered in light of McNeal's disciplinary history.

The Blue Ash Police Department's Policy No. 308, Officer Response to Calls, provides that "Officers responding to an emergency call shall proceed immediately. Officers responding to an emergency call shall continuously operate emergency lighting equipment and shall sound the siren." (R. 27-5, PageID 995-996). Immediately means immediately—without delay.  Importantly, if an officer does not respond to an emergency call with lights and siren, the officer is not exempted from Ohio motor vehicle laws. (*Id.*).  If an officer properly responds to an emergency call with lights and siren, then the officer may "[p]roceed past a red [light] or stop signal or stop sign but only after slowing down as may be necessary for safe operation ... Exceed any speed limits, provided this does not endanger life or property ... Disregard regulations governing direction of movement or turning in specified directions ... [and/or] Disregard regulations governing parking or standing." (*Id.*). Under the policy, McNeal understood that, when responding to emergency calls, like this one, he was required to proceed immediately.  (R. 27, PageID 711). Further, the policy provides that, if the responding officer is answering an emergency call and

6

chooses not to proceed with lights and sirens, the officer must "immediately notify Dispatch." (R. 27-5, PageID 995-996).

On June 26, 2018, McNeal was dispatched as the primary officer by the Hamilton County Communications Center to the Frisch's restaurant located at 9070 Plainfield Road. (R. 27, PageID 750; R. 27-7, PageID 711). The call reported that a male subject was down in the restaurant's bathroom due to a suspected overdose. (R. 27, PageID 742; R. 27-7, PageID 1003). McNeal and Sergeant Edward Charron both acknowledged the call. (*Id.*). Seconds after doing so, Dispatch upgraded the call to inform the officers that the man was not breathing. (R. 27, PageID 742, 745; R. 27-7, PageID 1003).

At the time the call was dispatched, Chief Noel was monitoring the communications. Chief Noel or some other member of command staff would typically go to the scene of a potential death in Blue Ash, and he decided to go to the scene after wrapping up a telephone call. (R. 25, PageID 340-341). Chief Noel also wanted to ensure that both McNeal and Charron were properly responding to the call as a spot check on the efficiency of those under his command. (*Id.*). Despite McNeal being the primary officer dispatched to the emergency, he took one minute and fifty-four seconds to exit the police station and get to his cruiser parked "right outside of the patrol room." (R. 27, PageID 752-53, R. 27-7, PageID 1018). Notably, he never explained or provided any reason for this inexplicable delay. Indeed,

McNeal's cruiser was parked 'right outside of the patrol room" of the police department at the time, and McNeal was fully aware that he was dispatched as the primary officer for a non-breather – a clear emergency. (R. 27, PageID 752).  After McNeal finally got in his cruiser, he sat there for another 52 seconds before even moving the vehicle. (*Id.* at 754). McNeal then decided to respond to a non-breather without running Code 3 (i.e., without using lights and sirens to quicken his response to the scene). (*Id.*). Further, despite being dispatched as the primary officer, McNeal did not even notify dispatch that he chose not to proceed Code 3 in response to the emergency – a violation of Blue Ash policy. (*Id.*). To this day, McNeal has never explained why he delayed his response.

Officer Baumgartner was not primarily responsible as a responding officer. Nevertheless, he self-dispatched and responded, to the scene, leaving the station after a quick stop in the bathroom. (R. 29-2, PageID 1189). In addition to the Blue Ash Police Department's response, the fire department also sent an ambulance, known as the "life squad" or "squad." (R. 27, PageID 744). Chief Noel drove out of the station and followed the squad to the Frisch's location. (R. 27-7). Chief Noel arrived at the scene ahead of both McNeal and Charron. (R. 25, PageID 341).  The man in the bathroom was a 37-year-old heart transplant patient; he did not survive. (R. 27-7, PageID 1003).

8

Based on slow responses witnessed from McNeal and Lt. Charron, Chief Noel ordered an internal investigation. (R. 29-1, PageID 1116).

## C.    The Department's Internal Investigation Determined McNeal Violated Multiple Policies.

The internal investigation included interviews under oath of relevant witnesses, reviewing police radio audio, as well as audio and video from officer Mobile Vehicle Recorder ("MVR") devices. (R. 29-2, PageID 1119-1553; R. 29-3 PageID 1554-1774). Based on the thorough investigation, Lt. Pohlman made various factual determinations summarized in an internal investigation report. (*Id*.; R. 29-4, PageID 1775-1776; R. 29-5 PageID 1777). Lt. Pohlman determined that McNeal and Officer Baumgartner arrived at Frisch's approximately five minutes and 20 seconds after receiving notice of an emergency situation; Officer Baumgartner left the station about one minute and 13 seconds after McNeal. (*Id*.). Despite their differing departure times, Officer Baumgartner arrived at Frisch's faster than McNeal because Officer Baumgartner responded Code 3, meaning he turned on the lights and siren on his police cruiser. (*Id*.). Sergeant Charron was eating lunch when the dispatch call was made, did not proceed Code 3 and arrived six minutes and 47 seconds after the call. (*Id*.). Neither Sergeant Charron nor McNeal responded to the call as mandated by Police Department policy. Particularly striking, McNeal casually and nonchalantly responded to a non-breather emergency despite his being

dispatched as the primary officer responsible for this emergency. (R. 27, PageID 750).

Specifically, the internal investigation first determined that McNeal did not properly respond to an emergency call: "P.O. McNeal was inexcusably delayed in his response by not going code 3, taking 52 seconds to leave the police station once he exited the [police department], and by not exiting the [police department] until 1:54 [minutes] after being dispatched." (R. 27-7, PageID 1018). This inexcusable delay under the circumstances was exacerbated because McNeal stopped at a red light despite being the primary officer dispatched to a non-breather. (*Id.* at 7).

Second, the investigation determined that McNeal violated traffic laws:  He drove 51 miles per hour ("MPH") in a 40 MPH speed limit zone on Reed Hartman Highway, and 46 MPH in a 25 MPH zone on Plainfield Rd. (R. 27, PageID 785:4-18).  Notably, because McNeal did not respond Code 3 with his lights and siren in operation, he could not speed. (R. 27, PageID 785:15-23). The investigation also concluded that this was not the first time McNeal failed to properly respond Code 3 in an emergency situation. (*Id.*).

Third, the investigation concluded that McNeal was not familiar with Department policies, a requirement of his job. (R. 27-7, PageID 1020).

Fourth, in addition to the previous policy violations, the internal investigation found that McNeal consistently flouted the Department's rules regarding use of the cruiser's video recording system and his microphone:

> During the course of this internal investigation, it was discovered that P.O. McNeal repeatedly and purposefully violated the Blue Ash Police Department's cruiser camera policy and was untruthful when asked about that conduct. Specifically, from January 1, 2018 through July 15, 2018, P.O. McNeal worked a total of 109 days. P.O. McNeal violated policy regarding properly checking the in car camera at the beginning of his shift on all 109 days. In addition to this daily policy violation, P.O. McNeal also violated the policy requiring the use of a microphone in conjunction with the in car camera on 29 of the 37 traffic stops he made during the same time period.

(R. 27, PageID 723:14-19; R. 27-7, PageID 1002). McNeal was aware that he was required to use his microphone during traffic stops, and has no evidence to refute the Department's findings. (R. 27, PageID 733:6-14, 795-96).

Fifth, the internal investigation concluded that McNeal was dishonest throughout the course of the investigation. (R. 27-7, PageID, PageID 1000). Prior to beginning his investigatory interview, McNeal signed a warning that stated "I am being ordered to truthfully and completely answer all questions presented to me and that failure to answer truthfully or completely will be the basis for charges of insubordination which may result in discipline, including dismissal." (R. 27, PageID 777:21-778:6; R. 27-7, PageID 1021). When asked if he checks his mobile video recording system daily, McNeal responded that he checks it "most of the time." (R. 27-7, PageID 1021). However, McNeal's video system had gone unchecked

from January 1, 2018 until his termination. (*Id.*). Additionally, when asked about his failure to use his microphone, McNeal responded that he "always had one." (*Id.*). As demonstrated by the investigation's review of McNeal's behavior, McNeal did not use a microphone for 29 of the 37 traffic stops he conducted in 2018. (*Id.*). McNeal's routine refusal to use the MVR in appropriate circumstances left the Department without an important evidence gathering tool in these traffic stops. (R. 25, PageID 345). McNeal also lied trying to justify his late arrival. (*Id.*). He stated that his late arrival to Frisch's was acceptable because he "heard people arrive at the scene before [he did]." (*Id.*). However, that was impossible.  There were no radio communications noting anyone arrived on the scene prior to McNeal. (*Id.*). Thus, the investigation determined that McNeal was dishonest on three separate occasions.

This conclusion strikes at the core of McNeal's ability to perform his duties as an officer, in particular to testifying in court proceedings. (R. 27-7, PageID 1001) Following investigators' determinations that he was dishonest, prosecutors would be required to disclose information about McNeal's dishonesty to defense counsel should McNeal be required to testify. (*Id.*). This dishonesty was determined to "seriously damage[] McNeal's credibility as a witness, which inhibits his ability to perform his essential job duties." (*Id.*).

**D.     The Blue Ash Police Department Terminates McNeal.**

On September 7, 2018, at the conclusion of the investigation, Lt. Gerhardt and Lt. Pohlman presented the recommendation to Chief Noel that McNeal should be terminated.   (*Id.*).  They based their recommendation on the five violations found in the internal investigation and McNeal's previous history of disciplinary issues. (*Id.*). When presented with the investigation's findings, viewed in the aggregate with McNeal's disciplinary history, Chief Noel accepted the Lieutenants' recommendation to terminate McNeal's employment and recommended termination in his letter to David Waltz. (R. 29-6, PageID 1778-1780).

McNeal waived the opportunity to attend a pre-disciplinary hearing, accompanied by his union representative. (R. 27, PageID 766:9-23). Subsequently, McNeal was terminated.  Following his termination, McNeal lost his challenge to the termination before a neutral arbitrator.  The arbitrator weighed the evidence presented by the City of Blue Ash and McNeal and upheld the termination decision. (R. 27, PageID 769-771; R. 25, 25-1, 25-2).

**E.     McNeal Was Disciplined Consistent With Other Employees Who Violated Policy.**

In addition to McNeal, Sergeant Charron was also investigated for his slow response time related to the June 26, 2018 call. (R. 27-7, PageID 1003; R. 29-7, PageID 1781-1783).   The investigation concluded that: (1) Sgt. Charron was untruthful during the investigation; (2) did not properly respond to an emergency

13

call; (3) did not act in his capacity as a supervisor; and (4) he was not familiar with departmental policy. (R. 29-7, PageID 1781-1783). Ultimately, the investigation recommended that Sgt. Charron be terminated. (*Id*.). Like McNeal, Sgt. Charron was given the opportunity to retire.  Unlike McNeal, Sgt. Charron retired in the fall of 2018. (R. 29-1, PageID 1116-1118).

## SUMMARY OF THE ARGUMENT

McNeal appeals the District Court's Order granting Appellees' Motions for Summary Judgment. The District Court properly granted summary judgment in Individual Appellees' favor for three reasons. This Court should affirm.

Initially, the undisputed, admissible evidence establishes that the only claim McNeal defended against Individual Appellees in response to their Motion for Summary Judgment, i.e., age discrimination under O.R.C. § 4112.02(A), was time-barred. Therefore, the District Court properly granted summary judgment in favor of Individual Appellees.

Second, even if McNeal's claims were not time-barred, the undisputed, admissible evidence demonstrates that Individual Appellees are immune under O.R.C. § 2744.03(A)(6).

Third, Appellee David Waltz is also entitled to judgment because McNeal did not respond to Appellee Waltz's Motion for Summary Judgment. Accordingly, McNeal abandoned any claim against Appellee Waltz and summary judgment must be affirmed.

Fourth, if this Court reaches the merits, McNeal cannot establish a *prima facie* case of age discrimination as a matter of law through either direct or circumstantial evidence. McNeal cannot show that he was treated less favorably than a younger police officer with a disciplinary history similar in all relevant respects. In his Brief,

15

McNeal relies almost exclusively on the inadmissible, lay opinion testimony of his former coworkers as support for his *prima facie* case of discrimination—even though none of them had personal knowledge of McNeal's disciplinary history or of a similarly situated comparator.

Further, McNeal cannot demonstrate he was replaced by a significantly younger employee. Based on the foregoing, the undisputed facts cannot support a *prima facie* case of age discrimination.

Finally, even assuming McNeal could establish a *prima facie* case, Appellees have articulated legitimate, non-discriminatory, and well-documented reasons for terminating McNeal's employment. In response McNeal presented no corroborated evidence to show his termination was pretextual.

Accordingly, the District Court properly granted summary judgment for Appellees on McNeal's age discrimination claims. This Court should affirm.

## **ARGUMENT**

## I. **STANDARD OF REVIEW**

On appeal, this Court reviews the District Court's Order granting Appellees summary judgment *de novo*. *Wathen v. General Electric Company*, 115 F.3d 400, 403 (6th Cir. 1997); A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56. Further, in reviewing a motion for summary judgment:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

## II.   THE DISTRICT COURT PROPERLY HELD THAT MCNEAL'S CLAIM UNDER O.R.C. § 4112.02(A) AGAINST APPELLEES WAS TIME BARRED.

McNeal's only remaining claim against Individual Appellees on appeal, i.e., age discrimination in violation of O.R.C. § 4112.02(A), was time-barred and properly dismissed on summary judgment. In Count V of McNeal's Second Amended Complaint, McNeal alleged that Individual Appellees violated "R.C. § 4112.02(A)" based on allegations that "Plaintiff has suffered illegal discriminatory treatment affecting the terms, conditions, and privileges of his employment because of his race and age." (R. 12, PageID #153, ¶ 47). Pursuant to the version of O.R.C. §4112.02(L) in effect at the complaint's filing, McNeal was required to bring his claim "by instituting a civil action, within one-hundred eighty days after the alleged unlawful discriminatory practice occurred." (*Id.*).   Here, the latest date of any

17

alleged "discriminatory practice" was October 2, 2018, McNeal's termination date. But McNeal did not file his original complaint until December 17, 2019, well beyond the 180 days. (R. 1, PageID 1-66). Accordingly, his only state law claim and the only claim against Individual Appellees included in this appeal, cannot be maintained as a matter of law.

In Motions for Summary Judgment before the District Court, Appellees set forth authority and argument establishing that McNeal's only state law claim (explicitly brought under "R.C. § 4112.02(A)") was time-barred under the version of O.R.C. § 4112.02(L) in effect. (R. 56, PageID 3821-22; R. 28, PageID 1084-85; R. 29, PageID 1113); O.R.C. § 4112.02(L) (2019 Ohio Code Archive)

In response, McNeal argued before the District Court:

> As to Defendant's remaining arguments, Plaintiff has demonstrated that the state law age discrimination claim is not time barred since the statute of limitations is 6 years. See *Ferraro v. B.F. Goodrich Co.,* 149 Ohio App.3d 301, 2002-Ohio-4398, 777 N.E.2d 282, ¶¶ 31-32 (9th Dist.).

(R. 55, PageID 3770). As the District Court rightly held, *Ferraro* did not support that age discrimination claims (explicitly predicated on "R.C. § 4112.02(A)") have a six-year statute of limitations.

Specifically, the District Court held that McNeal explicitly elected to proceed with his claim solely under "R.C. § 4112.02(A)" and is "thus subject to its 180-day statute of limitations period." (R. 63, PageID 63). Because McNeal's employment was terminated on November 28, 2018, the period for him to file suit under "R.C.

18

§ 4112.02(A)" ended on May 28, 2018. (R. 25-1, PageID 458). McNeal filed his initial Complaint on December 17, 2019 — well after the close of McNeal's statutory period to initiate his claim. (R. 1, PageID 1-66). McNeal subsequently filed both an Amended Complaint (on February 10, 2020) and a Second Amended Complaint (on June 6, 2020). (R. 2, PageID 67-132; R. 12, PageID 146-212). Both of McNeal's amended complaints restated the same election to bring his state law claim for purported age discrimination under "R.C. § 4112.02(A)" and not under alternative statutory bases available under Chapter 4112. (*Id*.).

Now, on appeal, McNeal cites this Court's decision in *Taglione v. Charter Communs., LLC*, to support his assertion that "because we deal here with a discharge, the six-year statute of limitations applies." 842 Fed. Appx. 988 (6th Cir. 2021). But *Taglione* says no such thing. In fact, the only language there pertaining to a six-year statute of limitations under O.R.C. Chapter 4112 *affirmed* the applicability of a 180-day statute of limitations for claims asserted under O.R.C. § 4112.02(A):

> § 4112.02 requires that the suit be filed "within one hundred eighty days after the alleged unlawful discriminatory practice occurred." Ohio Rev. Code § 4112.02(L). In contrast, § 4112.14 has been interpreted to carry a six-year statute of limitations. *Ahern v. Ameritech Corp.*, 137 Ohio App. 3d 754, 739 N.E.2d 1184, 1202 (Ohio Ct. App. 2000); *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 518 (6th Cir. 2001).

*Taglione v. Charter Communs., LLC*, 842 F. App'x at 992 n.6.[1] The cited authority contains no support for McNeal's claim that a lawsuit that "deal[s] … with a discharge" is governed by a six-year statute of limitations under Ohio law. (App. Doc. 23, Page 49). Indeed, courts have consistently held that all claims of age discrimination brought under Section 4112.02(A), or that are based on a violation of Section 4112.02(A), are governed by the 180-day statute of limitations. *Theodore v. Bridgestone Ams., LLC*, No. 5:15-CV-00698, 2015 U.S. Dist. LEXIS 103183, at *17 (N.D. Ohio Aug. 6, 2015); *see also Kathleen v. Cnty. of Del*., No. 2:12-CV-00381, 2013 U.S. Dist. LEXIS 42794, at *11 (S.D. Ohio Mar. 26, 2013).

As is clear from reviewing McNeal's Complaint, Amended Complaint, and Second Amended Complaint, he asserted only one state law age discrimination claim (under O.R.C. § 4112.02(A)). He never set forth any claim under any alternative statutory ground provided in O.R.C. Chapter 4112. (R. 1, PageID 1-66; R. 2, PageID 67-132; R. 12, PageID 146-212).

McNeal also cites O.R.C. § 4112.14(B), arguing that this statute "provides for a remedy against an employer that is identical to the federal remedy." (App. Doc.

---

[1] Appellant also cites this Court's opinion in *O'Donnell v. Univ. Hosps. Cleveland Med. Ctr*. That case dealt with a disability discrimination matter and did not concern the election of remedies for age discrimination plaintiffs under O.R.C. Chapter 4112 effective in 2019. Accordingly, it does not help Appellant. Further, this Court's subsequent decision in *Taglione v. Charter Communs., LLC*, clearly governs the matter and instructs, when applied in situations like this one, that McNeal's claim is time-barred. 842 F. App'x at 992 n.6.

23, Page 49). This alternative statutory provision is irrelevant. McNeal never alleged a claim under O.R.C. § 4112.14, but rather O.R.C. § 4112.02(A). (R. 12, PageID 153.)  He clearly claimed age discrimination under O.R.C. § 4112.02(A), not O.R.C. § 4112.14. (*Id.*) The various avenues for pursuing a claim for age discrimination under Ohio law are mutually exclusive; therefore, a plaintiff must "elect" the specific statutory provision. *Conrad v. U.S. Bank Nat'l Ass'n*, 391 F. Supp. 3d 780, 788 (S.D. Ohio 2019) (citing *Meyer*, 909 N.E.2d at 114; *Leininger*, 875 N.E.2d at 43-44); *Morris, Inc.*, 471 N.E.2d at 473; *Raub v. Garwood*, No. 22210, 2005 WL 662932, at *3 (Ohio Ct. App. Mar. 23, 2005). Here, McNeal explicitly elected O.R.C. § 4112.02(A).

To the extent McNeal now tries to raise a new theory under O.R.C. § 4112.14(B) or § 4112.02(J), he cannot. (R. 23, Page 49). *Estate of Quirk v. Comm'r*, 928 F.2d 751, 757-758 (6th Cir. 1991) ("It is well-settled that, absent exceptional circumstances,  a court of appeals will not consider an argument by an appellant that was not presented to or considered by the trial court."). McNeal cannot now raise for the first time on appeal alternative theories of age discrimination under O.R.C. Chapter 4112 that he did not raise in his Complaint, Amended Complaint, or Second Amended Complaint. *Id*.

For the reasons set forth herein, McNeal's age discrimination claim under O.R.C. § 4112.02(A), was time-barred. Accordingly, the District Court's order

granting summary judgment to Appellees on Count V of the Amended Complaint must be affirmed.

### III.    MCNEAL'S CLAIM AGAINST INDIVIDUAL APPELLEES ARE BARRED BY STATUTORY IMMUNITY.

As employees of a political subdivision, the Individual Appellees are immune under O.R.C. § 2744.03(A)(6). Therefore, Appellees are entitled to judgment as a matter of law on McNeal's lone claim under O.R.C. Chapter 4112 because they are immune. *See Hauser v. City of Dayton Police Dep't*, 2014-Ohio-3636, ¶ 15, 140 Ohio St. 3d 268, 273, 17 N.E.3d 554, 559.

O.R.C. § 2744.03(A)(6) provides an employee of a political subdivision immunity from liability, with three exceptions: (a) "The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;" (b) "The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;" and (c) "Civil liability is expressly imposed upon the employee by a section of the Revised Code."

Here, none of the exceptions apply to McNeal's single remaining claim against Individual Appellees on appeal. First, indisputably, the Individual Appellees allegedly discriminatory acts were within the scope of their official responsibilities. *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St. 3d 241, 243, 2007-Ohio-4948, ¶ 8, 874 N.E.2d 1155, 1158 (holding that when a supervisor's alleged action was taken "during work hours, at the office, and was carried out by someone with the

authority to hire, fire, promote and discipline the plaintiff," it will normally fall within the supervisor's scope of employment). Second, McNeal never alleges, much less supports with any facts, that the Individual Appellees' employment decisions were taken "with malicious purpose, in bad faith, or in a wanton or reckless manner." Further, in McNeal's Brief, he provides no evidence establishing Individual Appellees acted with a malicious purpose, in bad faith, or in a wanton or reckless manner. Rather, McNeal merely relies upon a conclusory assertion that "[t]he record demonstrates that Chief Noel acted with malicious purpose and in bad faith when he favored younger officers and unlawfully discriminated against McNeal." (App. Doc. 23, P. 49). Third, civil liability is not expressly imposed upon the Individual Appellees by a section of the Revised Code. *See Hauser v. City of Dayton Police Dep't*, 2014-Ohio-3636, ¶ 15, 140 Ohio St. 3d 268, 273, 17 N.E.3d 554, 559.

The Ohio Supreme Court decision instructs here in *Hauser v. City of Dayton Police Department*. *Id*. In that case, a major with the Dayton Police Department was sued in his individual capacity under O.R.C. § 4112.02(A) for employment discrimination. He moved for summary judgment, claiming immunity under O.R.C. § 2744.03(A)(6). *Id.* Hauser argued that O.R.C. Chapter 4112 expressly established civil liability for supervisors of a political subdivision, by citing the statutory definition of "employer," which includes "any person acting directly or indirectly in the interest of an employer." *Id.* at ¶ 9. The Ohio Supreme Court disagreed,

23

"[r]eading the statute as a whole and consistently with the legislative intent behind R.C. Chapter 4112, we conclude that R.C. 4112.01(A)(2) and 4112.02(A) do not expressly impose civil liability on political-subdivision employees so as to exempt them from immunity under R.C. 2744.03(A)(6)(c)." *Id.* at ¶ 15. Accordingly, the court reversed the judgment of Ohio's Second District Court of Appeals. *Id.* at ¶ 18.

Here, the circumstances are identical. McNeal asserted a claim under O.R.C. § 4112.02(A) on the theory that alleged employment discrimination by his supervisors is actionable based on the statutory definition of "employer." In *Hauser,* the Ohio Supreme Court held that a claim against public employers under O.R.C. § 4112.02(A) does not "expressly impose" civil liability upon individual managers as to trigger the immunity exception in O.R.C. § 2744.03(A)(6)(c). Therefore, because McNeal has not set forth facts or evidence to establish any other exception to statutory immunity, Individual Appellees are immune from his only remaining claim on appeal, i.e., discrimination in violation of O.R.C. § 4112.02(A).

Consequently, Individual Appellees are entitled to judgment as a matter of law on the alternative grounds that Individual Appellees are immune from McNeal's claim under O.R.C. § 4112.02(A).

## IV. MCNEAL ABANDONED ALL CLAIMS ASSERTED AGAINST APPELLEE DAVID WALTZ.

In response to Individual Appellees' Motion for Summary Judgment on the claims against Appellee Waltz individually, McNeal never responded with any

evidence. Therefore, Appellee Waltz is entitled to judgment as a matter of law because McNeal abandoned any claim against him.

Specifically, McNeal set forth no facts relating to Appellee David Waltz, let alone any evidence establishing a genuine dispute of material fact necessary to survive summary judgment. (R. 55, PageID # 3766-3803).

Now, on appeal,  McNeal asserts only the following: (1) "City Manager Waltz followed Noel's recommendation and terminated McNeal"; (2) "Further, they can both be held liable under the plain language of R.C. 4112.02(J), because they aided, abetted, compelled, and coerced the discharge of the Plaintiff, and the evidence indicates that both were involved in making that decision." (App. Doc. 23, P. 22, 49). Notably, the second reference is mere conclusion, unsupported by record evidence.  And it is alleged solely to support McNeal's attempt to add a new statutory claim for the first time on appeal. (*Id*. at 49).[2] Now, even considering McNeal's late arguments on appeal, he has not provided admissible record evidence to support any claim against Waltz. McNeal cannot rest on mere conjecture to overcome a properly supported motion for summary judgment. *Cannon v. Speedway LLC*, No. 16-CV-10257, 2017 U.S. Dist. LEXIS 148991, at *9 (E.D. Mich. Sep. 14, 2017).

---

[2] As discussed in Section II, *supra*, Appellant cannot now, for the first time on appeal, assert an additional claim under O.R.C. § 4112.02(J) against Individual Appellees.

McNeal never responded with evidence establishing a genuine issue of material fact for his claims against David Waltz. Accordingly, McNeal abandoned such claims, and this Court must uphold the District Court's decision to grant Appellee Waltz's Motion for Summary Judgment on this alternative basis.

## V.   INDIVIDUAL APPELLEES ARE ALSO ENTITLED TO SUMMARY JUDGMENT ON THE MERITS OF MCNEAL'S CLAIM.

McNeal's only claim against Individual Appellees, i.e., age discrimination under O.R.C. § 4112.02(A), cannot proceed.  McNeal relies only on the inadmissible opinions of former coworkers. They have no personal knowledge of the relevant facts. This is insufficient "evidence" as a matter of law to prove age discrimination against the Individual Appellees.

### A.   The District Court Properly Held That McNeal Never Established A Prima Facie Claim Of Age Discrimination.

The District Court correctly held that McNeal did not present direct evidence of age discrimination. Notably, McNeal presents no argument to the contrary on appeal. (R. 63, PageID 3888; App. Doc. 23, PageID 1-50). Accordingly, McNeal's argument must be analyzed under the *McDonnel Douglas* burden-shifting framework. *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002).[3]

---

[3] Ohio's anti-discrimination statute closely parallels the federal statute. So when analyzing a claim under O.R.C. § 4112.02, Ohio courts rely on cases interpreting both Title VII and the ADEA for guidance.  *Whitt v. Lockheed Martin Utility Serv., Inc.*, 209 F.Supp.2d 787, 792 (S.D. Ohio 2002) (citing *Plumbers & Steamfitters Joint*

Under the *McDonnell Douglas* burden-shifting framework, McNeal must establish a *prima facie* case of discrimination. In order to make a *prima facie* case, McNeal must establish the following elements: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Id*. As to the fourth prong of the *prima facie* case, McNeal must show either that he was replaced by a substantially younger person, or show that he was treated differently than similarly situated, non-protected employees. *Mickey v. Zeidler Tool & Die Co*., 516 F.3d 516, 521-22 (6th Cir. 2008).

If a plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment decision. *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008). If the employer meets this burden of production, then the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate, non-discriminatory reason given is a pretext for discrimination. *Id.* Nevertheless, the overall burden of persuasion remains with the plaintiff at all times. *Goodsite v. Norfolk Southern Ry*., 573 Fed. Appx. 572, 582 (6th Cir. Ohio 2014).

---

*Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St. 2d 192, 196 (Ohio 1981) and *Bucher v. Sibcy Cline Inc.*, 137 Ohio App.3d 230, 239 (Ohio App. 2000)).

27

The undisputed facts demonstrate that McNeal cannot establish a *prima facie* case of age discrimination as a matter of law because: (1) he cannot show he was treated less favorably than younger, similarly-situated officers; and (2) he was not replaced by a substantially younger employee.

### B.    McNeal Was Not Treated Less Favorably Than Younger Employees.

As recognized by the District Court and conceded by McNeal, he was not replaced by a substantially younger employee. Accordingly, he must establish that he was treated less favorably than younger, similarly-situated officers to establish a *prima facie* case of age discrimination. *Mickey*, 516 F.3d at 521-22. As recognized by the District Court, McNeal has not (and cannot) set forth facts to satisfy this fourth prong of the *prima facie* case. (R. 63, 3890-91).

To satisfy the fourth prong, McNeal must establish through proper record evidence that the employee he seeks to compare himself to must be similar in "all of the relevant aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).  Within the disciplinary context, comparable employees "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Jackson v. Int'l Fiber Corp.*, 395 F. App'x 275, 280 (6th Cir. 2010).

In analyzing the fourth prong of the *prima facie* case, the District Court found that Appellee never addressed it. (R. 63, PageID 3890).[4] McNeal never responded to Appellees' Motions for Summary Judgment by setting forth admissible record evidence establishing that McNeal was treated less favorably than comparator employees. Rather, McNeal attempted to rely solely on mere conclusory allegations, inadmissible lay opinions of coworkers, and brief references to employees who did not qualify as comparators and did not engage in policy violations similar to McNeal's actions in all relevant respects.[5]

In order to satisfy the fourth prong of the *McDonnell Douglas* test, McNeal is "required to prove that all of the relevant aspects of his employment situation [are] 'nearly identical' to those of [the non-protected employee's] employment situation." *Brown v. Metro. Gov't of Nashville & Davidson Cty.*, 722 F. App'x 520, 527–28 (6th Cir. 2018) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)); *see also Garrett v. Brennan*, No. 5:18- CV-221-JMH-EBA,

---

[4] Appellant erroneously asserts that the District Court "never even reached the comparator analysis, because it wrongly focused on whether someone had replaced McNeal, rather than whether others who were similarly situated had not been disciplined for similar offenses, while McNeal was." (App. Doc. 23, P. 39). The District Court, in fact, addressed the potential that a plaintiff may satisfy the fourth prong by evidence of comparators treated more favorably. Appellant just never satisfied this element. (R. 63, P. 3890). This shortcoming was fatal and likewise dooms his appeal. (*Id*).

[5] Such argument and testimony must be disregarded as further discussed in Section V. C., *infra*.

2021 WL 1554893, at *6 (E.D. Ky. Apr. 20, 2021) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

This Court has held that a plaintiff with a background of behavioral issues cannot meet the *prima facie* burden where the purported comparators do not have the same background. *See, e.g., Tartt v. City of Clarksville*, 149 Fed. App'x 456, 462 (6th Cir. 2005) (comparators not similarly situated where plaintiff had "a spotty discipline record" whereas comparators had "spotless disciplinary record[s]" or the record contained no evidence of comparators' disciplinary history); *Thompson v. City of Memphis*, 86 F. App'x 96, 102 (6th Cir. 2004) (holding, in discrimination case, that plaintiff failed to satisfy his *prima facie* burden because he did not know whether his female comparator had a disciplinary record similar to his own); *see also Robinson v. Quicken Loans, LLC*, No. 21-1392, 2022 U.S. App. LEXIS 25983, at *19 (6th Cir. Sep. 14, 2022) ("Differences in experience and disciplinary history establish that [the plaintiff] and her comparators … are not similarly situated."; *Jackson v. VHS Detroit Receiving Hosp.*, 814 F.3d 769, 777 (6th Cir. 2016) (noting that "more severe treatment of more egregious circumstances" does not justify inference of discriminatory motive).

Here, from 2016 through 2018, McNeal received five official disciplinary actions; "[t]hose disciplinary actions include: one Documented Oral Reprimand, one Written Reprimand, and three separate suspensions without pay. These suspensions

without pay include a one day suspension, a three day suspension, and a four day suspension." (R. 27-7, PageID 1000, 1035). The four day suspension that McNeal served was originally recommended to be a seven day suspension.  But McNeal and City leadership *agreed* to a reduced suspension of four days in exchange for McNeal waiving his right to move forward with a hearing. (R. 27, PageID 684). Shortly after McNeal's third suspension, he did not respond to a citizen dispatch. (R. 29-1, PageID 1116-1117). On top of not timely responding to an emergency dispatch, the resulting investigation revealed that McNeal lied, was unfamiliar with written policies, and did not use his MVR. (R. 27, PageID 723:14-19; R. 27-7, PageID 1002, 1020). Simply put, no officer ever engaged in a similar spree of serious misconduct over a 24-month period. Rather than point to a coworker who is similar in all relevant respects, McNeal tries to compare isolated, single instances of misconduct—which is insufficient as a matter of law. *See, e.g., Tennial v. UPS*, 840 F.3d 292, 304 (6th Cir. 2016) ("Instead, the plaintiff must show that the comparator is similarly situated in all relevant respects and has engaged in acts of comparable seriousness."). Since no coworker has a remotely similar disciplinary history, McNeal's argument concerning comparators falls far short of creating a permissible inference of age discrimination.

First, McNeal cites Sergeant Charron's testimony regarding Officer Huff allegedly not running Code 3 to a dispatch. (App. Doc. 23, P. 19). But Charron

admitted at deposition that, (1) he did not recall precisely if it was Officer Huff or someone else; (2) Chief Noel noticed the officer had not run Code 3 and asked Sergeant Schlie to investigate; (3) his only basis for this information was secondhand; (4) Charron never interviewed Huff regarding purportedly failing to report Code 3 to a dispatch; and (5) he did not know whether the dispatch in question was for a non-breather or whether the person was the primary responding officer dispatched. (R. 35, PageID 2083, 2167-2170). Lacking any similar disciplinary history, Officer Huff cannot serve as a comparator for McNeal.

Second, McNeal cites Sergeant Stewart's reference to Officer Ballman allegedly driving through a red light at 75 mph and not being disciplined. (App. Doc. 23, P. 23; R. 51, PageID 3369-3371) (emphasis added). Stewart actually testified "to [Stewart's] knowledge that was not addressed with discipline," and he "was not involved in the situation, only saw and heard of it after the fact." (R. 51, PageID 3369-3371) (emphasis added). Accordingly, McNeal proffered no admissible evidence establishing Officer Ballman indeed sped, that Chief Noel was aware of the incident, or even if Officer Ballman, in fact, received discipline for the alleged policy violation. McNeal also has not established that he and Officer Ballman are similar in all relevant respects for purposes of comparator analysis.

Third, regarding McNeal's discipline for not complying with a direct order (and multiple reminders) to submit required documentation related to his return to

work, McNeal notes he "identified a similar situation with Officer Taylor with no resulting discipline." (App. Doc. 23, P. 14). On this, McNeal testified: "if I'm right, I thought Taylor came back. He was supposed to have his form, but somehow they disregarded him not having it, and he was able to stay there and work … I might have the wrong person, but I'm thinking it was – there was one male officer that was supposed to have his return-to-work slip and didn't, and somehow it was worked out that he didn't need it anymore." (R. 27, PageID 818-819). Further, McNeal testified that he did not recall if Chief Noel was even Chief of Police at the time. (*Id*.). McNeal stated "[i]t's been a while ago. I don't recall who I heard it from or even if I talked to [Taylor]." (*Id*.). This is insufficient on its face to establish a genuine dispute of material fact regarding purported discrimination. McNeal also has not set forth evidence that he and Officer Taylor are similar in all relevant respects for purposes of comparator analysis.

Lastly, McNeal cites Officer Roach and that she "could only identify an informal bluebook violation" for other officers not turning in reports on time. (App. Doc. 23, P. 15). Roach really testified that: (1) she does not know whether command staff was aware of any such incidences of an officer not turning in reports on time; and (2) she is not aware of anyone engaged in conduct substantially similar to McNeal who did not receive discipline. (R. 54, PageID 3642-3645). Accordingly, McNeal has proffered no admissible evidence sufficient to create a genuine dispute

of material fact regarding purportedly different treatment from any comparable employees outside of the protected class. Even accepting the lay opinion and hearsay testimony of McNeal's former coworkers, which the Court cannot, McNeal never provided any evidence that any similarly situated employee was treated more favorably.

As is well established "the employees to whom the plaintiff seeks to compare himself must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Parra v. City of Toledo*, No. 3:15-cv-1812, 2021 U.S. Dist. LEXIS 92940, at *11 (N.D. Ohio May 17, 2021) (internal citation omitted). In *Parra*, for example, the plaintiff brought a claim for failure to promote based on his being Hispanic. (*Id*.). In granting summary judgment for the employer, the court noted "while he recites details about alleged circumstances in which non-Hispanic officers were promoted after previously having been disciplined, he fails to demonstrate that any of those officers had pending suspensions or were on restricted duty." (*Id*.). Here, even accepting McNeal's feeble claims about other officers, McNeal has presented no evidence of an officer with a substantially similar disciplinary background receiving lesser punishment for the policy violations uncovered in McNeal's internal investigation that led to his termination.

34

McNeal never established a *prima facie* case of discrimination and Individual

Appellees are entitled to judgment as a matter of law as a result.

### C.     Even If McNeal Established His *Prima Facie* Case He Failed To Establish Pretext.

Even if this Court reaches the issue of pretext, McNeal has presented no

evidence to prove Appellees' legitimate, non-discriminatory, and well-documented

reasons for his termination were mere pretext for age discrimination. (R. 29-1 – 29-

7); *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003). For

McNeal to prove pretext he needed to show by a preponderance of the evidence

either that the proffered reason for his termination: (1) had no basis in fact; (2) did

not actually motivate the employer's action; or (3) was insufficient to motivate the

action.  *Dews v. A.B. Dick Co*., 231 F.3d 1016, 1021 (6th Cir. 2000). The District

Court correctly found that McNeal never met his burden.

McNeal argues on appeal that the well-documented reasons for his

termination were pretext for age discrimination based on his unsupported assertion

such disciplinary history was "the result of a targeted scrutiny and a disguised effort

to force McNeal, the oldest patrolman in the Department, out of his job." (App. Doc.

23, PageID 43). Federal courts ruling on a motion for summary judgment have

consistently refused to credit such "audacious chain[s] of inferences." *Saqr v. Univ.

of Cin*., No. 1:18-cv-542, 2021 U.S. Dist. LEXIS 243801, at *13 (S.D. Ohio Dec.

22, 2021) (citing *Gregg v. Ohio Dep't of Youth Servs*., 661 F. Supp. 2d 842, 859

(S.D. Ohio 2009)). In *Saqr*, the Southern District of Ohio rejected a plaintiff's argument that legitimate, non-discriminatory reasons for his dismissal as a medical student ("poor academic performance") was pretext based on the assertion that his poor performance was *itself* caused by the university's failure to support him and other minority students. *Id*. McNeal attempts a similar argument here, i.e., McNeal argues his significant disciplinary history and bases for termination is pretext because McNeal's policy violations were part of a conspiracy of discrimination and targeted scrutiny. (App. Doc. 23, PageID 43). McNeal's argument is unsupported by evidence and fails to prove pretext.

Ultimately, McNeal cannot create a genuine dispute of material fact that his age was the "determining factor" for his termination, and therefore his claim of age discrimination fails.[6] *Wheeler v. McKinley Enterprises*, 937 F.2d 1158, 1162 (6th Cir. Tenn. 1991).

### D.    McNeal Relies On Inadmissible Testimony that Cannot Establish An Issue Of Material Fact.

In his Brief, McNeal cites unsubstantiated and/or irrelevant, inadmissible assertions. But the uncontroverted, relevant, and supported evidence establishes that

---

[6] Appellant does not set forth an argument against Individual Appellees for any alleged theory that he suffered age discrimination based on a hostile work environment, to the extent Appellant's Brief is construed to assert such claim against Individual Appellees', Individual Appellees refer to the argument and authority set forth in the City's Brief on this topic as if rewritten herein.

Appellees terminated McNeal's employment based on his well-documented history of policy violations. (R. 29-1 – 29-7).

In reviewing the ruling on summary judgment, this Court must only consider admissible evidence. Fed. R. Civ. P. 56(c)(4). Testimony (via affidavits or deposition transcripts) must be disregarded if it is inadmissible hearsay, testimony not based on the declarant's (or deponent's) personal knowledge, or amounts to inadmissible lay opinion testimony. *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 927 (6th Cir. 1999) ("Hearsay evidence may not be considered on summary judgment."); *Mitroff v. Xomox Corp.,* 797 F.2d 271, 276 (6th Cir. 1986) (lay opinion testimony alleging a pattern of age discrimination in the workplace is inadmissible); *Barnett v. Pa Consulting Group, Inc.,* 35 F. Supp. 3d 11, 21-22 (6th Cir. 2014) ("in an employment discrimination action … Rule 701 bars lay opinion testimony that amounts to a naked speculation concerning the motivation for a defendant's adverse employment decision."); *Dabney v. Christmas Tree Shops,* 958 F. Supp. 2d 439, 451 (6th Cir. 2013) (disregarding lay opinions of a plaintiff's coworker that the employer discriminates and granting summary judgment for the employer).

Also, in *McNeil v. Sonoco Prods. Co.,* this Court affirmed summary judgment for an employer after the district court rejected affidavits submitted by a plaintiff because they were not based on personal knowledge*.,* No. 16-6304, 2017 U.S. App.

LEXIS 28180, at *6 (6th Cir. May 23, 2017). In affirming, this Court held, "[b]ecause the affidavits are not based upon specific facts arising out of the affiants' personal knowledge, there is no genuine dispute as to whether Sonoco hired a person not belonging to McNeil's protected class who was not more qualified than McNeil. McNeil has therefore failed to make a *prima facie* showing of racial discrimination." *Id.* In sum, a plaintiff cannot create a genuine dispute of material fact using inadmissible materials such as lay opinion testimony, testimony not based on personal knowledge, and testimony based on hearsay.

Despite these clear limitations on evidence, McNeal relies on declarations and deposition testimony from seven former coworkers that never surmount the evidentiary threshold for three independent reasons: (1) the declarants admittedly do not have factual knowledge for the broad claims made and rely on hearsay; (2) the declarants' claims do not allege McNeal's termination was based on his age; and (3) the lay opinions of McNeal's former coworkers second-guessing and speculating about purported biases of the management decision-makers are irrelevant. *Id.*; *Miller v. Potash Corp. of Saskatchewan*, 2010-Ohio-4291, ¶ 33; Fed. R. Civ. P. 56(c)(4).

### 1.    William Fritts Must Be Disregarded.

The first witness cited by McNeal is William Fritts ("Fritts"). His testimony should be excluded because it is not based on personal knowledge and inadmissible lay opinion. McNeal cites Fritts' testimony to claim "McNeal was not treated fairly

and was specifically targeted for progressive discipline in an effort to end his employment … officers who had less tenure on the police force were not subject to the same level of targeted discipline ….” (*Id.*). Interestingly, when comparing McNeal's description of Fritts' testimony in his memorandum in opposition to Appellees' Motions for Summary Judgment, the language is nearly identical to that in McNeal's Brief here. (R. 55, PageID # 3772-3773; App. Doc. 23, P. 25-26). Originally, McNeal characterized Fritts' testimony at PageID 2998-99 from “[t]hose officers who had favorable relationships with the administration were not subjected to the same level of targeted discipline; in fact, the administration overlooked the same type of minor policy violations for which McNeal was disciplined for favored officers.” On appeal, McNeal argues such testimony establishes, “[t]hose officers who had **less tenure on the police force** were not subjected to the same level of targeted discipline; in fact, the administration overlooked the same type of minor policy violations for which McNeal was disciplined when the violations **involved younger officers.**” (App. Doc. 23, P. 25-26) (emphasis added to identify differences).

However, there is no testimony in the cited passage to support McNeal's revised summary of Fritts' testimony. (R. 47, PageID 2998-99). Instead, Fritts' testimony suggests alleged preferential treatment for those “who do the chief's bidding” and Chief Noel's “personal friends” and “golfing buddies.” (*Id.*). This

testimony is both wrong and insignificant. Individual Appellees categorically deny that Chief Noel treated his employees preferentially based on personal friendships. More importantly, however, the cited record testimony from Fritts is not properly outlined in McNeal's Brief. As is clear from the quoted excerpts of Fritts' testimony, he did not testify to any purported favoritism of "younger officers" or those with "less tenure," and instead made allegations regarding preference for those "personal friends" and "golfing buddies" of Chief Noel. (*Id*.). Fritts' actual testimony does not support McNeal's claim of age discrimination.

McNeal next cites to Fritts' own assessment of McNeal's work performance. This purportedly "remained consistent" and command staff "singl[ed] out [McNeal] for disparate treatment that included heightened scrutiny of his work performance … punishment for minor or insignificant policy violations … [and] harsher punishments than those received, if any, by other officers for similar conduct." (App. Doc. 23 at P. 26-27). This is Fritts' inadmissible lay opinion and is irrelevant. Purported favoritism or negative views of McNeal by command staff does not establish age discrimination. *Dabney v. Christmas Tree Shops,* 958 F. Supp. 2d 439, 451 (6th Cir. 2013).

McNeal also cites Fritts trying to draw a false equivalence between the untimely submission of a police report (for which McNeal was properly disciplined according to Blue Ash policies) and alleged backdating of quarterly evaluations of

Blue Ash employees by Lt. Gerhardt. (App. Doc. 23, P. 15). Even assuming that Lt. Gerhardt backdated employee reviews, the alleged conduct is dissimilar from McNeal's policy violations relative to completing police reports. Plus, it involves a Lieutenant who is not similar to McNeal in all relevant respects.

Further, Fritts testified that he had no knowledge about the command staff's decision-making, admitted having no personal knowledge to support McNeal's claim of age discrimination, and testified he had not worked directly with the McNeal on a regular basis in the five to seven years prior to McNeal's termination. (R 47, PageID 3141-3142, 3060-3061). Further, Fritts acknowledged repeatedly that he had no knowledge of the facts relating to McNeal's discipline or termination. (*Id*. at PageID 3113-26). Fritts admitted he did not "have any facts to establish Gary McNeal's claim that he was discriminated against on the basis of his age by the City of Blue Ash, David Waltz, Chief Noel or anyone else." (*Id*. at PageID 3141-3142). Fritts' testimony therefore does not provide any basis for establishing a genuine dispute of material fact.

### 2.    Beth Roach Must Be Disregarded.

McNeal also cites testimony of Beth Roach ("Roach") that McNeal was "the subject of heightened scrutiny and targeted discipline with severe consequences" and that McNeal was subject to punishment for policy violations that would not have been grounds for punishment of another officer. (App. Doc. 23, P. 27-28). But her

testimony and declaration were not based on personal knowledge. At best, it was inadmissible lay opinion.

McNeal's bullet points attributed to Roach in his Brief are nearly identical to those included in McNeal's Memorandum in Opposition to Appellees' Motions for Summary Judgment. One discrepancy is worth noting though.  Below, McNeal characterized Roach's testimony at PageID 3206-3208 saying "Blue Ash does not enforce its discipline fairly, **with favorable officers, including members of the administration, receiving informal discipline while other officers**, such as McNeal, received more severe discipline." Now, he argues, "Blue Ash does not enforce its discipline fairly, **with older officers, such as McNeal**, receiving more severe discipline **for the same offenses**" (App. Doc. 23, P. 27) (emphasis added to identify differences). Upon review of the cited passage of Roach's deposition, there is no testimony to support McNeal's revised summary of her testimony on Appeal. (R. 47, PageID 3206-3208).

Instead, Roach's testimony discusses alleged lesser, self-imposed discipline that Sgt. Gerhardt (a management-level employee) *gave to himself* related to missed details on two occasions. (*Id*.). Because Sgt. Gerhardt is part of the Blue Ash command staff, he is not a comparable or similarly-situated employee of the police department. In addition, Roach's testimony contains no reference to any disparity based on age or referring broadly to "older officers." (*Id*.). Accordingly, the cited

42

record testimony from Roach provides no support for McNeal's claim that he was discriminated against on the basis of age. McNeal then cites this same testimony from Roach on page 30 of his Brief as part of a string citation in support of his assertion that "the record is replete with evidence that McNeal was not treated equally to others outside the protected class." (App. Doc. 23, P. 37). Once again, Roach merely offered her inadmissible opinion about self-imposed discipline by Sgt. Gerhardt, who was not similarly situated to McNeal in terms of position, alleged policy violation, or disciplinary history. (R. 47, PageID 3206-3208).

Ultimately, Roach's testimony must be disregarded. Roach admittedly had no supervisory role and no personal knowledge of McNeal's disciplinary incidents. (R. 54, PageID 3629-3665). Further, concerning the internal investigation resulting in McNeal's termination, Roach testified she had no personal knowledge apart from reading the report after McNeal's termination. (*Id.* at PageID 3665). Roach testified she "do[es not] have any personal knowledge of what level of scrutiny are applied to the officers" and "do[es not] have any facts to establish Gary McNeal's claim that he was discriminated against based on his age...." (*Id.* at PageID 3686).

### 3.    Todd Stewart Must Be Disregarded.

Next, McNeal cites testimony of Todd Stewart, for the notion that "Blue Ash does not administer discipline fairly and evenly within the department," and that McNeal was subjected to heightened scrutiny and "singled out … for disparate

treatment" and "harsher punishments than those received, if any, by other officers for similar conduct." (App. Doc. 23, PageID 28-29). Notably, Stewart does not even assert that McNeal was discriminated against because of his age. Instead, Stewart's testimony provides only inadmissible opinions of purported favoritism. (*Id*.).

Indeed, Stewart consistently acknowledged that he had **no personal knowledge** of the facts relating to McNeal's disciplinary history. (R. 51, PageID 3386-3421). Further, Stewart acknowledged he did not serve in any supervisory role relative to McNeal, was not involved in disciplinary decisions, **and worked on a separate shift from McNeal** that would only "sometimes … overlap to where I would work overtime, where [McNeal] would work overtime and we would come together on a shift." (*Id*. at 3396, 3416). Accordingly, Stewart testified he had no personal knowledge as to why discipline was issued to McNeal. (*Id*. at 3400).

Further, Stewart testified that he had no personal knowledge as to why McNeal's employment was terminated, apart from a statement made by Chief Noel in a department-wide meeting after McNeal's termination relating to McNeal's response time for an emergency dispatch. (*Id*. at 3418, 3420). Regarding purportedly heightened scrutiny of McNeal's performance, Stewart was not aware of any other officers whose MVR use was reviewed like McNeal. Notably, Stewart acknowledged that he did not know whether other officers were scrutinized in a similar fashion. (*Id*. at 3462). Accordingly, Stewart has no personal knowledge to

support a claim of heightened scrutiny of McNeal's performance. When asked whether Stewart "ha[s] any facts to establish that Gary McNeal was discriminated against based on his age by the City of Blue Ash," Stewart clearly stated his opinion was "anecdotal" observation that "I've seen what seems like, over the past, officers who are up in age **and performance as far as statistical performance begins to drop**, that they are – seems to be held to a little bit more scrutiny **to try to get them to perform in statistical categories the same as a 25-year-old officer would**." (*Id.* at 3470-3471) (emphasis added). Because holding older officers to the same "statistical" standards as younger officers is lawful and the precise opposite of disparate treatment on the basis of age, Stewart's testimony actually supports McNeal's termination.   As a result, Stewart's testimony could not create a genuine dispute of material fact for McNeal to survive summary judgment and must be disregarded on appeal.

### 4.    Kenneth Schrand Must Be Disregarded.

McNeal then cites Officer Kenneth Schrand. (App. Doc. 23, P. 29-31). But these references to Schrand's testimony include unsupported opinions (1) about purportedly heightened scrutiny that McNeal was under during his time as an officer, (2) speculation that reporting discrimination would be detrimental to an officer's career at Blue Ash, (3) command staff purportedly finding violations "for the purpose of creating a paper trail to discipline another officer rather than improving

the efficiency of the department," (4) an opinion that Chief Noel and Lt. Gerhardt targeted McNeal with heightened scrutiny of his work performance and harsher discipline, and (5) an opinion that Lt. Gerhardt "carried out Chief Noel's orders to fulfill his personal agenda such as getting rid of McNeal." (*Id.*). Unfortunately for McNeal, these inadmissible opinions are meaningless for purposes of this Court's analysis. Schrand admitted that he had no personal knowledge on which to base these claims.

Schrand testified that he is "not aware of any facts supporting [his] claim that [McNeal] was targeted during – previous to the incident at Frisch's which ultimately resulted in his termination…" (R. 42, PageID 2795). Schrand also testified that **during the full year leading up to McNeal's termination** Schrand wasn't "working with him on the road" and has "**no personal knowledge**" "**with respect to [McNeal's] job performance**." (*Id*) (emphasis added). Regarding Schrand's opinions about officers being scrutinized after entering DROP, Schrand himself admitted that he has been in DROP for "almost five years" and testified that he had neither personally "received any adverse employment actions" nor had Schrand "been targeted or scrutinized or picked on by command staff." (*Id*. at PageID 2796). Relating to McNeal's disciplinary history, Schrand has no personal knowledge of the facts supporting the discipline and was not involved in the discipline. Therefore, he has no personal factual knowledge on which McNeal may rely to survive

summary judgment. (*Id*. at PageID 2841, 2900, 2901, 2903, 2907, 2911). Regarding McNeal's claim of discrimination, Schrand testified, "**I don't have any facts**. I mean, a lot of it is perception" and continued that command staff appointments of special assignments (in his opinion) should have been given to others. (*Id*. at PageID 2894) (emphasis added). Not only does Schrand's testimony consist of inadmissible lay opinions, he lacks any personal knowledge of facts to support McNeal's claim.

Elsewhere in his Brief, McNeal cites Schrand to try to discredit the City's policy requiring lights and sirens when responding to an emergency. McNeal even cites this testimony to claim that Chief Noel has done the same. (App. Doc. 23, P. 25). But Schrand only testified that certain circumstances may necessitate a police officer responding to an emergency without use of lights and sirens. (R. 42, PageID 2729-2733). Schrand acknowledged that circumstances may require an emergency response without drawing attention, like a hostage situation and a domestic violence emergency. (*Id*.). Neither of those situations apply here.

Schrand was asked in deposition, "other than those situations, such as a domestic where obviously somebody else's life could be in peril [if] they know they are coming ... so you don't want to announce your presence … are you required to run lights and siren on an emergency call?" (*Id*.). Schrand's response: "Yes." (*Id*.). Despite McNeal's argument, Schrand's testimony, in fact, confirms Blue Ash Police Department's Policy No. 308, Officer Response to Calls: "Officers responding to an

47

emergency call shall proceed immediately. Officers responding to an emergency call shall continuously operate emergency lighting equipment and shall sound the siren." (*Id.*; R. 27-5, PageID 995-996). Importantly, McNeal has never argued that his failure to follow this policy on June 26, 2018 was based on any special circumstances that necessitated McNeal travel to a non-breather emergency without going "Code 3" (using lights and sirens). Accordingly, Schrand does not help McNeal.

McNeal also cites Schrand testimony in support of an asserted "pattern of targeting older officers for heightened scrutiny, removing them from their assignments without cause, and passing older officers over for premium positions in favor of younger, less experienced officers with witnesses testifying to particular persons, examples, and incidents." (App. Doc. 23, P. 33). Not so. Instead, Schrand's testimony refers to speculation about a promotion and a preferred assignment. (R. 42, PageID 2758-2763). Schrand did not recall when these matters allegedly occurred or whether Chief Noel was even in charge of the Blue Ash Police Department at the time. (*Id.*). Further, Schrand acknowledged he "ha[s] no idea why" or "what factors were taken into account to promote" the employee in question over another. (*Id.*). Regarding Schrand's testimony about Jim Kelley moving from a detective role to a patrol officer role, Schrand testified that he "d[idn't] have any knowledge as to why the decision was made to pull Jim Kelley from the detective role back to patrol," and that Kelley later "voluntarily retired" after spending "over

48

five" years in the DROP program and continuing work as an officer of the Blue Ash Police Department. (*Id*.).

Perhaps most relevant, Schrand's inadmissible lay opinions do not even relate to age discrimination. His opinion is that any perceived targeting of McNeal was related to McNeal's shortcomings in performance metrics. Regarding purported heightened scrutiny of McNeal's work performance, Schrand testified to noticing (during an earlier period at which time McNeal and Schrand both worked on day shift) that Schrand was personally more active in traffic enforcement than McNeal. (*Id*. at PageID 2804). Specifically Schrand testified, "I knew that Gary – when I worked with Gary on day shift, I knew I was making more traffic stops … I could tell that maybe I was having two or three a day and Gary would have one a day." (*Id*. at PageID 2804). Then Schrand testified his own opinion that McNeal was picked on more by the command staff was due to McNeal's lack of productivity as an officer. Specifically, "[i]t's just, you know … if somebody … **would have been able to put up the numbers, they would have been overlooked or maybe less discipline**." (*Id*. at PageID 2805) (emphasis added). Schrand admittedly has no personal knowledge of facts to support McNeal's claim of age discrimination.

### 5.    Sgt. Edward Charron Must Be Disregarded.

Finally, McNeal cites Sgt. Charron. (App. Doc. 23, P. 31-32). Charron is a former Blue Ash Police officer who was permitted to retire in lieu of termination

based on findings of the department's internal investigation for the same late response to a non-breather. That also revealed he committed numerous policy violations. (App. Doc. 23, P. 31-32; R. 29, 29-1–29-7). McNeal's Brief attributes a number of inadmissible, conclusory opinions to Sgt. Charron that Chief Noel and Lt. Gerhardt targeted McNeal for disparate treatment including heightened scrutiny of work performance, harsher punishments, assignments of menial tasks (i.e., an assignment related to traffic enforcement), and that McNeal was targeted "due to his senior position and age." (App. Doc. 23, PageID 31-32).

When questioned specifically about the internal investigation of McNeal's and Charron's response to the Frisch's non-breather emergency dispatch, which eventually led to both McNeal and Charron separating employment, Charron admitted he could not dispute the factual bases for the investigation. (R. 35, PageID 2124-2129). Further – upon review of Chief Noel's recommendation to terminate Charron's employment – Charron testified that he did not "have any facts to dispute that this is the reason that Chief Noel recommended that [Charron's] employment be terminated." (*Id*. at 2129). Although Charron opined that he believed Chief Noel and Lt. Gerhardt's reasons for recommending termination were "trumped-up nonsense," he could not provide any facts to support this opinion. (*Id*.). Charron also opined in testimony, in contrast with the other witnesses, that a dispatch for a non-breather, such as the Frisch's incident, was not actually an emergency call. (*Id.* at

PageID 2177-2179). This is plainly incorrect under Blue Ash policies and is understood by McNeal and others cited in his Brief. (R. 27-5, PageID 995-96; R. 27, PageID 750; R. 51, PageID 3375-78). Charron attempted to justify this opinion, stating he was not obligated to perform CPR if he was not comfortable doing so, despite acknowledging in his testimony that he was previously trained to perform CPR. (R. 35, PageID 2178-2179). This testimony makes clear the underlying issues that led to Charron's investigation and departure from the Blue Ash Police department: when lives are on the line, Charron demonstrated a lack of urgency and commitment.

When questioned about any factual basis for his broad opinion "older officers [were] placed under a lot more scrutiny than the younger officers in the department," Charron admitted that he had no personal knowledge to support the opinion and relied only on purported statements from former employees about their own treatment, i.e., Erskine Page. (R. 35, PageID 2194-2199). When asked what discipline Page supposedly received that other officers did not, Charron admitted "[o]h, I don't recall the specifics on it…" (*Id*. at PageID 2199). Charron then mentioned Page was not approved for time off, but admitted Charron had not spoken with any supervisors involved regarding why Erskine Page was supposedly not approved for time off. (*Id*. at PageID 2200). Further, Charron could not provide any supporting facts regarding officers permitted time off while Page was supposedly

not permitted time off. (*Id*.). Critically, Charron also admitted at deposition that at the time of the supposedly heightened scrutiny of Page, Scott Noel was not even Chief. (*Id*. at PageID 2196).

Based on review of opinions McNeal attributed to Charron and Charron's testimony in hours of depositions, a pattern is clear: Charron is quick to offer sweeping opinions relating to the Blue Ash Police Department and Chief Noel as well as speculation regarding nefarious motives. When asked for specific facts, however, he cites none. Charron admitted that he never spoke with Chief Noel regarding the reasons for an internal investigation. (*Id*.). Charron later testified that he witnessed Chief Noel "walking on his tippy-toes" around the time McNeal received discipline well before termination. (*Id*. at PageID 2140-2242). Charron cited this as support for his opinion that McNeal was discriminated against. (*Id*.). Charron also speculated regarding his own discipline that "it wouldn't have shocked [Charron] if they paid that hearing officer off and he found against me," but Charron had no basis in fact for such testimony. (*Id*. at PageID 2385). Charron's testimony demonstrates a lack of personal knowledge of facts to justify such opinion; Charron's wild speculation regarding Appellees was insufficient for McNeal to survive summary judgment in this case and cannot be considered now.

The unsupported opinions of McNeal's former coworkers do not create a genuine dispute of material fact.[7] Appellees have presented a wealth of admissible evidence establishing a thorough investigation and legitimate, non-discriminatory reasons for McNeal's termination. McNeal "cannot show pretext by the good opinions of co-workers or previous supervisors. *See Weller v. Titanium Metals Corp.*, 361 F.Supp.2d 712, 722 (S.D.Ohio 2005); *see also Peters v. Lincoln Elec. Co.*, 285 F.3d at 474 (affidavits from co-workers did little, if anything, to rebut employer's reason and merely showed that the plaintiff had a good rapport with some of his co-workers.)." *Miller v. Potash Corp. of Saskatchewan*, 2010-Ohio-4291, ¶ 33.

As discussed above, the witnesses relied upon in McNeal's Brief have no firsthand knowledge regarding McNeal's discipline or termination or the bases for such management decisions. Accordingly, this Court must disregard such testimony in its *de novo* review of the District Court's decision. *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d at 927; *Mitroff v. Xomox Corp.*, 797 F.2d at 276; *Barnett v. Pa Consulting Group, Inc.*, 35 F. Supp. 3d 21-22; McNeil, No. 16-6304, 2017 U.S. App. LEXIS 28180, at *6.

---

[7] To avoid duplication, Individual Appellees incorporate by reference the statement of facts, arguments, record evidence, and authority contained in the City's forthcoming appellate brief as if fully written herein. Individual Appellees understand the City's brief has not yet been filed with the Court for purposes of citation.

Lastly, the Court cannot credit irrelevant opinions of McNeal's former coworkers in an employment discrimination suit. McNeal's former coworkers second-guessing legitimate management decisions is also insufficient as a matter of law. *Miller v. Potash Corp. of Saskatchewan*, 2010-Ohio-4291, ¶ 33 ("It is 'the perception of the decision maker which is relevant,' and not that of co-workers.") (citing *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996)).

**E.    Individual Appellees Are Entitled To The Honest Belief Rule.**

Finally, Individual Appellees are entitled to the honest belief rule. To avoid duplication, Individual Appellees refer here to the authority and argument set forth in the City Brief as if rewritten herein.

McNeal claims that Individual Appellees are not entitled to rely on the honest belief rule. (App. Doc. 23, P. 41-43). In support, McNeal references (without citation) lay opinions of McNeal and coworkers that management should have made a different decision, which is clearly insufficient.

McNeal accuses Chief Noel of dishonesty regarding McNeal's lack of urgency in responding as the primary dispatch to a non-breather. (*Id.*). McNeal claims that Appellees are not entitled to rely on the honest belief rule, because Chief Noel's statement that McNeal's delay "could have made the difference between life and death" is "false." (*Id.*).

Chief Noel's claim in Individual Appellees' Motion for Summary Judgment is accurate that McNeal's delay "could have made the difference between life and death," even though Individual Appellees do not argue here that McNeal's delay specifically caused a person's death in this particular instance.

McNeal argues now that he may not have left the station sooner to respond to an emergency dispatch out of fear that stopping work on another project could have created a "catch 22." (App. Doc. 23, PageID 17). McNeal's speculation about other potential projects is irrelevant. Most importantly, McNeal testified that he could not provide "any reason why [he was] delayed" for that emergency dispatch. (R. 27, PageID 773). McNeal has no evidence to support his speculation.

Ultimately, McNeal himself agreed with this statement during his deposition: "[Question] When asked if 1 [minute] 13 [seconds of delay] could make a difference between life and death when someone is not breathing, [McNeal] said 'It's possible.' [Question] Is that what … you told officers? [Answer of McNeal] If that's what is written. [Question] And you agree with that? [Answer of McNeal] Yeah, it's possible. [Question] Okay. It also says, 'Police Officer McNeal conceded that he would have arrived on scene faster if he had responded Code 3.' Do you agree with that? [Answer of McNeal] Yes." (R. 27, PageID 775).

McNeal agreed under oath with what he now says is a "false" statement that his nonchalant arrival as the primary officer to a non-breather emergency could be the difference between life and death. McNeal cannot evade that now.

## **CONCLUSION**

For all of the foregoing reasons, this Court should affirm summary judgment for the Individual Appellees.

Respectfully submitted,

*/s/ Kirk M. Wall*
Kirk M. Wall (#0061642)
H. Devon Collins (#0095657)
DINSMORE & SHOHL LLP
191 W. Nationwide Blvd., Suite 200
Columbus, Ohio  43215
Phone: (614) 628-6880
Fax: (614) 628-6890
Email:  kirk.wall@dinsmore.com
devon.collins@dinsmore.com

*Counsel for Appellees Scott Noel (individual capacity) and David Waltz (individual capacity)*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.   This Brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this Brief contains 12,439 words (according to the word-processing software, Microsoft Word, which was used to prepare the Brief), excluding the parts of the Brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.   This Brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Times New Roman in 14-point font.

*/s/ H. Devon Collins*
H. Devon Collins (#0095657)

*Counsel for Appellees Scott Noel (individual capacity) and David Waltz (individual capacity)*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2023, I electronically filed the foregoing document with Court using the CM/ECF system, a copy of which will automatically be forwarded to the parties or their counsel of record.

*/s/ H. Devon Collins*
H. Devon Collins (#0095657)

*Counsel for Appellees Scott Noel (individual capacity) and David Waltz (individual capacity)*

## APPELLEE'S DESIGNATION OF DISTRICT COURT DOCUMENTS

| Document ID | Date | Description | Page ID |
|---|---|---|---|
| 1 | 12/17/2019 | Complaint | 1-66 |
| 2 | 2/10/2020 | Amended Complaint | 67-132 |
| 12 | 6/6/2020 | Second Amended Complaint | 146-212 |
| 24 | 6/17/2021 | Notice of Filing Affidavit and Arbitration Transcript and Exhibits | 254 |
| 25 | 6/17/2021 | Deposition by Defendants Scott Noel, The City of Blue Ash, David Waltz. | 255-406 |
| 25-2 | 6/17/2021 | Union Arbitration Exhibits | 462-591 |
| 25-1 | 6/17/2021 | City Arbitration Exhibits | 407-461 |
| 27 | 6/18/2021 | Deposition of Gary McNeal | 594-981 |
| 27-1 | 6/18/2021 | Exhibit A - Deposition of Gary McNeal | 982-990 |
| 27-2 | 6/18/2021 | Exhibit B - Deposition of Gary McNeal | 991 |
| 27-3 | 6/18/2021 | Exhibit C - Deposition of Gary McNeal | 992-993 |
| 27-4 | 6/18/2021 | Exhibit D - Deposition of Gary McNeal | 994 |
| 27-5 | 6/18/2021 | Exhibit E - Deposition of Gary McNeal | 995-996 |
| 27-6 | 6/18/2021 | Exhibit F - Deposition of Gary McNeal | 997-999 |
| 27-7 | 6/18/2021 | Exhibit G - Deposition of Gary McNeal | 1000-1045 |
| 27-8 | 6/18/2021 | Exhibit H - Deposition of Gary McNeal | 1046-1047 |
| 27-9 | 6/18/2021 | Exhibit I - Deposition of Gary McNeal | 1048-1054 |
| 27-10 | 6/18/2021 | Exhibit J - Deposition of Gary McNeal | 1055 |
| 27-11 | 6/18/2021 | Exhibit K - Deposition of Gary McNeal | 1056 |

| 27-12 | 6/18/2021 | Exhibit L - Deposition of Gary McNeal | 1057-1062 |
|-------|-----------|---------------------------------------|-----------|
| 27-11 | 6/18/2021 | Exhibit M - Deposition of Gary McNeal | 1063-1074 |
| 28 | 6/18/2021 | Def. Motion for Summary Judgment | 1075-1094 |
| 29 | 6/21/2021 | Def. Motion for Summary Judgment | 1116-1781 |
| 29-1 | 6/21/2021 | Declaration of Scott Noel | 1116-1118 |
| 29-2 | 6/21/2021 | Exhibit A - Declaration of Scott Noel | 1119-1553 |
| 29-3 | 6/21/2021 | Exhibit B - Declaration of Scott Noel | 1554-1774 |
| 29-4 | 6/21/2021 | Exhibit C - Declaration of Scott Noel | 1775-1776 |
| 29-5 | 6/21/2021 | Exhibit D - Declaration of Scott Noel | 1777 |
| 29-6 | 6/21/2021 | Exhibit E - Declaration of Scott Noel | 1778-1780 |
| 29-7 | 6/21/2021 | Exhibit F - Declaration of Scott Noel | 1781-1783 |
| 30 | 7/5/2021 | Declaration of Mark Ziegler | 1784-1787 |
| 32 | 7/5/2021 | Deposition of Mark Zeigler | 1789-2044 |
| 33 | 7/6/2021 | Declaration of Ed Charron | 2045-2048 |
| 35 | 7/6/2021 | Deposition of Ed Charron (Vol.I) | 2050-2309 |
| 36 | 7/6/2021 | Deposition of Ed Charron (Vol.II) | 2310-2405 |
| 37 | 7/6/2021 | Declaration of Chris Zielinski | 2406-2407 |
| 39 | 7/6/2021 | Deposition of Chris Zielinski | 2409-2682 |
| 40 | 7/6/2021 | Declaration of Ken Schrand | 2683-2685 |
| 42 | 7/6/2021 | Deposition of Ken Schrand | 2687-2971 |
| 43 | 7/6/2021 | Declaration of Jim Kelley | 2972-2974 |
| 44 | 7/6/2021 | Declaration of John Connolly | 2975-2977 |
| 47 | 7/7/2021 | Deposition of William Fritts | 2981-3187 |
| 49 | 7/7/2021 | Deposition of Beth Roach (Vol.I) | 3189-3295 |
| 51 | 7/7/2021 | Deposition of Todd Stewart | 3297-3556 |
| 54 | 7/11/2021 | Deposition of Beth Roach (Vol.II) | 3560-3765 |
| 55 | 7/19/2021 | Response in Opposition to Summary Judgment | 3766-3803 |

| 56 | 8/09/2021 | City of Blue Ash Reply in Support of Motion for Summary Judgment | 3806-3825 |
| 57 | 8/09/2021 | Individual Defendants' Reply in Support of Motion for Summary Judgment | 3826-3846 |
| 63 | 2/23/2023 | Order granting Summary Judgment | 3875-3895 |
| 64 | 2/23/2023 | Clerk's Judgment | 3896 |
| 65 | 3/2/2023 | Notice of Appeal | 3897 |