**No. 23-3180**
_____

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**
_____

**Gary McNeal**
*Plaintiff-Appellant*,

**v.**

**City of Blue Ash, David Waltz and Scott Noel**
*Defendants-Appellees*.
_____

On appeal from the United States District Court for the Southern District of Ohio,
Western Division Case No. 1:19-cv-01072
_____

**BRIEF OF APPELLEES, CITY OF BLUE ASH AND DAVID WALTZ AND
SCOTT NOEL, IN THEIR OFFICIAL CAPACITY**
_____

Dawn M. Frick (0069068)
8163 Old Yankee Street, Suite C
Dayton, Ohio 45458
(937) 222-2333, (937) 222-1970 (fax)
dfrick@sdtlawyers.com
*Counsel for Appellees the City of Blue Ash
And David Waltz and Scott Noel, in their
Official Capacity*

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **GARY MCNEAL** | **:** | **CASE NO.: 23-3180** |
| *Appellant*, | **:** | **Appeal from the United States** |
| | | **District Court for the Southern** |
| **v.** | **:** | **District of Ohio, Western Division,** |
| | | **Case No.** 1:19-cv-01072 |
| **CITY OF BLUE ASH**, *et al.*, | **:** | |
| *Appellees*. | **:** | |

---

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

Pursuant to 6th Cir.R. 26.1, Defendants-Appellees make the following disclosure:

1.    Are said parties a subsidiary or affiliate of a publicly owned corporation? **NO.**

2.    Is there a publicly owned corporation, not a party to the appeal that has a financial interest in the outcome? **NO.**

August 4, 2023                    */s/ Dawn M. Frick*
Date                                    Dawn M. Frick (0069068)

i

# TABLE OF CONTENTS

**Page**

Table of Authorities……………………………………………….………iv

I.    Statement in Support of Oral Argument……………………………….x

II.   Statement of Issues……………………………………………………..1

III.  Statement of the Case…………………………………………………...2

      A. Relevant Procedural History…………………………………………..2

      B.  Relevant Factual Background……………………………………………3

IV.   Summary of Argument…………………………………………...........13

V.    Law and Argument……………………………………………………...13

      A. Standard of Review……………………………………...…....………13

      B.  The District Court Correctly Viewed the Evidence Properly Before it
          When Granting Appellees' Summary Judgment on McNeal's
          ADEA Claim…………………………………………………...……….14

          1.  McNeal cannot establish a *prima facie* case of age discrimination…17

          2.  Appellees articulated a legitimate non-discriminatory reason
              for its actions which McNeal cannot show was a pretext
              for discrimination………………………………………………………22

      C. McNeal failed to overcome his burden on summary judgment on
         his hostile work environment age discrimination claim…..……………34

      D. The District Court Properly Determined that McNeal's State Law Age
         Discrimination Claim was Time-Barred…………………………………39

VI.   Conclusion………………………………………………………………41

VII.    Certificate of Compliance…………………………………………...........42

VIII.   Certificate of Service…………………………………………………..........43

IX.     Addendum……………………………………………………………………….44

# TABLE OF AUTHORITIES

## Cases

*Abdulnow v. Campbell Soup Supply Co.*, 502 F.3d 496 (6th Cir.2007) ................24

*Ackerman v. Diamond-Shamrock Corp.*, 670 F.2d 66 (6th Cir. 1982)...................23

*Agnew v. BASF Corp.*, 286 F.3d 307 (6th Cir. 2002) ............................................38

*Alberty v. Columbus Twp.*, 730 F. App'x 352, 360 (6th Cir. 2018)........................32

*Alexander v. Gardner–Denver Co.*, 415 U.S. 31, 94 S.Ct. 1011 (1974) ................33

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986).................14

*Baker v. City of Toledo, Ohio*, No. 3:05 CV 7315, 2007 WL 1101254 (N.D.Ohio April 11, 2007).........................................................................................................36

*Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 101 S.Ct. 1437 (1981) ........................................................................................................................33

*Bellian v. Bicron Corp.* (1994), 69 Ohio St.3d 517 .................................................40

*Berryman v. SuperValu Holdings, Inc.*, S.D. Ohio No. 3:05cv169, 2010 WL 1257843 (March 31, 2010) ......................................................................................34

*Blackburn v. Shelby Cty.*, 770 F. Supp. 2d 896 (W.D. Tenn. 2011).......................37

*Bonner v. Scope Servs.*, No. 1:12-cv-32, 2015 WL 4465038 (S.D. Ohio July 21, 2015) .........................................................................................................................29

*Braithwaite v. Timken Co.,* 258 F.3d 488 (6th Cir.2001) ................................. 24, 25

*Branson v. Price River Coal Co.*, 853 F.2d 768 (10th Cir., 1988) ..........................23

*Broska v. Henderson*, 70 Fed.Appx. 262 (6th Cir. 2003) .................................. 35, 36

*Brown v. Metro. Gov't of Nashville & Davidson Cty.*, 722 F. App'x 520 (6th Cir. 2018) ................................................................................................................. 19, 38

*Brown v. Renter's Choice, Inc.*, 55 F.Supp.2d 788 (N.D.Ohio 1999) ....................15

*Byrd v. Tenn. Wine & Spirits Retailers Ass'n*, 883 F.3d 608, 613 (6th Cir.), *cert. granted*, —— U.S. ——, 139 S.Ct. 52 (2018) ......................................................14

*Carter v. University of Toledo*, 349 F.3d 269 (6th Cir.2003) ..................................15

*Chancellor v. Coca-Cola Enterprises, Inc.*, S.D. Ohio, Western Division No. C-1-08-65, 2009 WL 4674058 (2009) ........................................................................34

*Chappell v. GTE Products Corp.*, 803 F.2d 261 (6th Cir.1986) ............................28

*Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339 (6th Cir. 2012) .........................30

*Clayton v. Meijer, Inc.*, 281 F.3d 605 (6th Cir. 2002) ...........................................19

*Collins v. New York City Transit Auth.*, 305 F.3d 113 (2d Cir. 2002) ...................33

*Diamond v. U.S. Postal Service*, 29 Fed.Appx. 207 (6th Cir.2002) .......................36

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998).... 19, 30

*Faragher v. Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275 (1998)...................... 35, 36

*Ferguson v. Snow*, 185 Fed.Appx. 456 (6th Cir. 2006)..........................................38

*Frazier v. Jenkins*, 770 F.3d 485 (6th Cir. 2014)...................................................40

*Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir.2009)....................................... 16, 31

*Gonzalez v. Hostetler Trucking, Inc.,* S.D. Ohio No. 2:11-cv-137, 2013 WL 5182835 (Sept. 12, 2013).....................................................................................35

*Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711 (6th Cir. 2006) ...........28

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S.Ct. 2343 (2009)............... 17,31

*Hale v. ABF Freight Sys., Inc.*, 503 F. App'x 323 (6th Cir. 2012) .........................39

*Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367 (1993) ......................34

*Hawkins v. Anheuser–Busch, Inc.,* 517 F.3d 321 (6th Cir.2008) ...........................35

*Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S.Ct. 1701 (1993).......................17

*Hollowell v. Soc'y Bank & Tr.*, 78 Ohio App. 3d 574, 605 N.E.2d 954 (1992) ......23

*Hookman v. Aaron's Inc.*, No. 2:15-CV-2318, 2017 WL 1155925 (S.D. Ohio
  Mar. 27, 2017)...................................................................................................24

*Hussain v. Nicholson*, 435 F.3d 359 (D.C.Cir.2006)................................................37

*Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921 (6th
  Cir.1999) ............................................................................................................17

*Jingyuan Feng v. Rockwell Collins, Inc.*, 2017 WL 5895000, 2017 U.S. Dist.
  LEXIS 178865 ...................................................................................................18

*Johnson v. Ford Motor Co.*, 13 F.4th 493 (6th Cir. 2021) ......................................40

*Joostberns v. United Parcel Services, Inc.*, 166 Fed.Appx. 783 (6th Cir.2006) .....25

*Jordan v. City of Cleveland*, 464 F.3d 584 (6th Cir.2006) ......................................37

*K.V.G. Props., Inc. v. Westfield Ins. Co.*, 900 F.3d 818 (6th Cir. 2018) ................14

*Keever v. City of Middletown*, 145 F.3d 809 (6th Cir. 1998) ..................................39

*La Grant v. G & W Mfg. Co.*, 748 F.2d 1087(6th Cir. 1984) ..................................23

*Lewis v. Philip Morris Inc.*, 355 F.3d 515 (6th Cir. 2004) ......................................37

*Locke v. Commercial Union Ins. Co.*, 676 F.2d 205 (6th Cir. 1982) ......................23

*Long v. Ford Motor Co.,* 193 Fed.Appx. 497 (6th Cir.2006)...................................35

*Luna v. Bell*, 887 F.3d 290 (6th Cir. 2018).............................................................14

*Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106 (6th Cir.2001). 24, 25

*Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078 (6th Cir. 1994) 27, 29, 30

*Marks One Car Rental, Inc. v. Auto Club Grp. Ins. Co.,* 761 F. App'x 516 (6th Cir. 2019) ................................................................................................................13

*McDonald v. Union Camp Corp.,* 898 F.2d 1155 (6th Cir.1990) ..........................17

*McNeal v. City of Blue Ash,* No. 1:19-CV-01072, 2023 WL 2184598 (S.D. Ohio Feb. 23, 2023) ....................................................................................................44

*McNeely v. Ross Corr. Inst.*, Franklin App. No. 06AP-280, 2006 WL 2949014, 2006-Ohio-5414 ....................................................................................................40

*Miles v. South Central Human Resource Agency, Inc.*, 946 F.3d 883 (6th Cir. 2020) ................................................................................................................30

*Minadeo v. ICI Paints*, 398 F.3d 751 (6th Cir. 2005).............................................41

*Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992).........................................19

*Morris v. Oldham County Fiscal Court*, 201 F.3d 784 (6th Cir. 2020)...................41

*Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596 (7th Cir. 2010)...........18

*Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181 (11th Cir.1984).......15

*Oker v. Ameritech Corp.,* 89 Ohio St.3d 223, 2000-Ohio-139...............................40

*Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 326 (6th Cir.), *cert. denied sub nom. Pelcha v. Watch Hill Bank*, 142 S. Ct. 461 (2021) ............................ 15, 16, 30, 32

*Peters v. Lincoln Elec. Co.,* 285 F.3d 456, 474 (6th Cir.2002)……………………29

*Phelps v. Yale Sec., Inc.*, 986 F.2d 1020 (6th Cir.1993).........................................28

*Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796 (6th Cir. 1994)......................19

*Reeves v.  Sanderson Plumbing Products, Inc*., 530 U.S. 133, 120 S. Ct. 2097 (2000) ........................................................................................... 31, 33

*Ruiz v. Ohio Dep't of Rehab. & Corr.*, No. 1:09 CV 994, 2010 WL 2232415 (N.D. Ohio May 28, 2010) .............................................................................15

*Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 529 (6th Cir. 2014) ......... 17, 31, 32

*Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261 (6th Cir.2010) ....16

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008) .................................40

*Shanklin v. Fitzgerald*, 397 F.3d 596 (8th Cir. 2005) .............................................18

*Smart v. Ball State University*, 89 F.3d 437 (7th Cir.1996)....................................36

*Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir.1998) ............................. 24, 25

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742..........................28

*Taglione v. Charter Communications, LLC*, 842 F. App'x 988 (6th Cir. 2021).......39

*Taylor v. Methodist Le Bonheur Healthcare*, No. 219CV02796MSNATC, 2021 WL 2934596 (W.D. Tenn. June 22, 2021), *report and recommendation adopted*, No. 2:19-CV-2796-MSN-ATC, 2021 WL 2932747 (W.D. Tenn. July 12, 2021) ...................................................................................................................31

*Thomas v. AT & T Servs., Inc.*, 933 F. Supp. 2d 9545 (N.D. Ohio 2013), aff'd (Oct. 29, 2013) ...........................................................................................17

*Tillman v. Ohio Bell Tel. Co*., 545 F. App'x 340 (6th Cir.2013) .............................23

*Tribble v. Cincinnati Bell Tel.*, No. 1:09-CV-568, 2011 WL 3627402 (S.D. Ohio May 4, 2011), *report and recommendation adopted*, No. C-1-09-568, 2011 WL 3627284 (S.D. Ohio Aug. 17, 2011)....................................................................24

*United States v. Int'l Bhd. Of Teamsters*, 954 F.2d 801 (2d Cir.1992)...................33

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 133 S.Ct. 2517 (2013) ........17

*Weller v. Titanium Metals Corp.*, 361 F.Supp.2d 712, 722 (S.D.Ohio 2005)..…...29

*White v. Kroeschell Facility Servs., Inc.*, No. 3:20-CV-130, 2021 WL 4399743
   (S.D. Ohio Sept. 27, 2021)...................................................................................41

*Woythal v. Tex–Tenn Corp.*, 112 F.3d 243 (6th Cir.1997) ......................................28

**Statutes**

29 U.S.C. § 623(a) .......................................................................................... 15, 41

O.R.C. 4112.02 ....................................................................................... vi, 39, 40, 41

**Rules**

Fed. R. Civ. P. 56 .......................................................................................................14

## I.    STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellees the City of Blue Ash, David Waltz and Scott Noel, in their official capacity do not believe that oral argument is necessary in this case.  This case involves the District Court's decision to grant the Defendants' Motion for Summary Judgment on the merits of essentially two claims, age discrimination (under the ADEA and state law R.C. 4112.02) and hostile work environment because of age. Appellees believe that this is not a factually complicated case. The record below is well established, and the briefs fully set forth the applicable law.  Oral argument will not aid the Court in its *de novo* review of these two claims.  Thus, Appellees respectfully request that oral argument not be scheduled in this matter.

## II. STATEMENT OF ISSUES

1.      Did the District Court properly determine that McNeal did not establish a prima facie case on his federal age discrimination claim? (RE 63, PageID 3891.)

2.      Did the District Court properly determine that McNeal failed to establish a triable issue of fact that Appellees legitimate non-discriminatory reasons for their actions were not a pretext for discrimination? (RE 63, PageID 3893.)

3.      Did the District Court properly determine that McNeal did not put forth sufficient evidence to establish a prima facia ADEA hostile work environment claim? (RE 63, PageID 3894.)

4.      Did the District Court properly find that Plaintiff's state age discrimination claim is time-barred? (RE 63, PageID 3885.)

## III.  STATEMENT OF THE CASE

### A. <u>Relevant Procedural History</u>

This matter arises out of Gary McNeal's ("McNeal" or "Appellant") former employment with the Village of Blue Ash Police Department.  On December 17, 2019, McNeal filed his initial Complaint in this matter. (RE 1.)  Thereafter, on February 10, 2020, McNeal filed his first Amended Complaint. (RE 2.)  On June 16, 2020, McNeal filed his Second Amended Complaint. (RE 12), wherein he alleged claims against the City of Blue Ash (the "City"), City Manager David Waltz ("Walsh"), in his official and individual capacity and Chief Scott Noel ("Noel"), in his official and individual capacity (collectively referred to herein as "Appellees").

On June 18, 2021, Appellees filed their Motion for Summary Judgment on all claims alleged in McNeal's Second Amended Complaint. (RE 28.) On June 21, 2021, David Waltz and Chief Scott Noel also filed a separate motion as to the claims against them in their individual capacities. (RE 29.) On July 19, 2021, McNeal filed a combined Memorandum in Opposition to both Motions for Summary Judgment. (RE 55.) In his Memorandum, McNeal abandoned his claims of discrimination, retaliation and hostile work environment based upon ethnicity/race and national origin and his retaliation claim. (See generally, RE 55.)

Appellees filed their Reply in Support of Summary Judgment on August 9, 2021 (RE 56) and David Waltz and Chief Scott Noel filed their separate Reply

Memorandum as to the claims against them in their individual capacities. (RE 57.) Thereafter, on February 23, 2023, the District Court filed its "Opinion and Order" granting both Motions for Summary Judgment and Judgment was entered that same date. (Docs. 63, 64.) On March 2, 2023, McNeal filed his Notice of Appeal. (RE65.)

### B. <u>Relevant Factual Background</u>

Gary McNeal was hired as a patrol officer by the City of Blue Ash Police Department in July, 2001 (RE 27, PageID 636). Over the course of McNeal's employment with the City of Blue Ash, the Police Department had four different Chiefs of Police and numerous other staffing changes within McNeal's chain of command. (RE 27, PageID 651). Hired within a year of McNeal, Appellant Scott Noel became Chief of Police in December of 2017. (*Id*. at PageID 660; Decl. Noel). McNeal acknowledged that changes in leadership can result in changes in the Department's enforcement priorities; Chief Noel wanted to hold everyone in his Department to a higher standard. (RE 27, PageID 653-654.)

From 2016 through 2018, McNeal received five official disciplinary actions including one Documented Oral Reprimand, one Written Reprimand, and three separate suspensions without pay. The suspensions without pay included a one-day suspension, a three-day suspension, and a four-day suspension. (RE 27-7, PageID 1000, 1035). Specifically, on July 24, 2017, McNeal received a 4-day suspension for disobeying a direct order, from the then Sgt. Gerhardt, regarding following up on a

report. He was disciplined under Blue Ash Police Policies 200.3.3, 319.3, and 319.5.1b and Blue Ash Codified Ordinance 135.10 (b)(f). McNeal negotiated the length of this suspension from 7 days to 4 days to avoid going to a hearing on the violations. (RE 27, PageID 684.) On July 24, 2017 McNeal received a 3-day suspension for failing to bring a return to work form when returning to work on June 18, 2017 after an on -duty injury. He was disciplined under section 135.10(b) (f) of the Blue Ash Codified Ordinance and Blue Ash Police Policy 200.3.3, 319.3, and 319.5.1b. On January 3, 2017, McNeal received a 1-day suspension for a delay in response to a detail assignment. He was disciplined under section 135.10(f) of the Blue Ash Codified Ordinance and Blue Ash Police Policy 319.5.7. On December 27, 2016, McNeal received a written reprimand for disobeying a direct order from a supervisor to follow up on several cases. He was disciplined under section 135.10 (b) (f) of the Blue Ash Codified Ordinances and Blue Ash Police Policy 200.3.3, 319.3, and 319.5.1b. On December 20, 2016, McNeal received a documented oral reprimand for failing to turn in training certificates requested by a superior. (RE 29-4, PageID 1775.)

On June 26, 2018, McNeal was dispatched as the primary officer by the Hamilton County Communications Center to an emergency situation at a Frisch's Restaurant on Plainfield Road. (RE 27, PageID 750; RE 27-7, PageID 711). The call came from dispatch reporting that a male subject was down in the restaurant's

bathroom due to a suspected overdose. (RE 27, PageID 742; RE27-7, PageID 1003). McNeal and Sergeant Edward Charron ("Charron") both responded to the call. (Id.). Seconds after McNeal and Charron acknowledged the call, Dispatch upgraded the call to inform the officers that the man was not breathing. (RE 27, PageID 742, 745; RE27-7, PageID 1003).

At the time the call was dispatched, Chief Noel was monitoring the communications at the station. Chief Noel or some other member of command staff would typically go to the scene of a potential death in Blue Ash, and as such, Noel decided to make his way to the scene after ending a telephone call. (RE 25, PageID 340-341). Chief Noel also wanted to ensure that both McNeal and Charron were properly responding to the call as a spot check on the efficiency of those under his command. (Id.). McNeal's cruiser was parked "right outside of the patrol room" of the police department at the time, and McNeal was fully aware that he was dispatched as the primary officer for a non-breather – a clear emergency. (RE 27, PageID 752). However, despite McNeal being the primary officer dispatched to the emergency, he took one minute and fifty-four seconds to exit the police station and get to his cruiser. (RE 27, PageID 752-53, RE 27-7, PageID 1018). After McNeal's lack of urgency getting to his cruiser, he sat in the cruiser for another 52 seconds before even moving the vehicle and leaving the station. (Id. at 754). McNeal then headed to the call for the non-breather without running Code 3 (i.e., without using

lights and sirens to quicken his response to the scene). (Id.). Further, despite being

dispatched as the primary officer, McNeal did not notify dispatch that he chose not

to proceed Code 3 in response to the emergency in violation of Blue Ash policy.

(Id.).

The Blue Ash Police Department's Policy No. 308, "Officer Response to

Calls," provides that "Officers responding to an emergency call shall proceed

immediately. Officers responding to an emergency call shall continuously operate

emergency lighting equipment and shall sound the siren." (RE 27-5, PageID 995-

996). Importantly, if an officer does not respond to an emergency call with lights

and siren, the officer is not exempted from Ohio motor vehicle laws. (Id.). If an

officer properly responds to an emergency call with lights and siren in operation,

then the officer may "[p]roceed past a red [light] or stop signal or stop sign but only

after slowing down as may be necessary for safe operation ... Exceed any speed

limits, provided this does not endanger life or property ... Disregard regulations

governing direction of movement or turning in specified directions ... [and/or]

Disregard regulations governing parking or standing." (Id.). McNeal understood

that, under the policy, when responding to emergency calls, officers are required to

proceed immediately. (RE 27, PageID 711). Further, the policy provides that, if the

responding officer is answering an emergency call and chooses not to proceed with

6

lights and sirens, the officer must "immediately notify Dispatch." (RE 27-5, PageID 995-996).

In contrast, Officer Baumgartner who was not primarily responsible as a responding officer, but self-dispatched and responded to the scene, left the station after a quick stop in the bathroom. (RE 29-2, PageID 1189, Decl. Noel, Ex. A at 71). In addition to the Blue Ash Police Department's response, the fire department also sent an ambulance or "life squad". (RE 27, PageID 744). Chief Noel also drove out of the station and followed the squad to the Frisch's location. (RE 27-7). Chief Noel arrived at the scene ahead of both McNeal and Charron. (RE 25, PageID 341). The man in the bathroom was a thirty-seven (37) year old heart transplant patient; he did not survive. (RE 27-7, PageID 1003).

Based upon the lackadaisical response to the emergency call by McNeal and Charron, Chief Noel ordered that an internal investigation be conducted. (RE 29-1, PageID 1116, Noel Decl. ¶ 3-4). The internal investigation included interviews, under oath of relevant witnesses; review of police radio audio; and review of audio and video from officers' Mobile Vehicle Recorder devices. (RE 29-2, 29-3. Noel Decl. Ex. A, B). Based on the investigation conducted, Lt. Pohlman made various factual determinations summarized in an internal investigation report. (RE 29-2, 29-3, 29-4, 29-5, Noel Decl. Ex. A, B, C, D). Lt. Pohlman determined that McNeal and Officer Baumgartner arrived at Frisch's approximately five minutes and twenty

seconds after receiving notice of an emergency situation; however, Officer Baumgartner left the station about one minute and thirteen seconds after McNeal. (Id). Despite their differing departure times, Officer Baumgartner was able reach the Frisch's location faster than McNeal because Officer Baumgartner responded Code 3, meaning he turned on the lights and siren on his police cruiser. (Id).  Charron was eating lunch when the dispatch call was made, did not proceed Code 3, and arrived within six minutes and forty-seven seconds of the call. (Id). Neither Charron nor McNeal responded to the call as mandated by Police Department policy. Particularly troubling from the investigation was McNeal's casual and nonchalant response to a non-breather emergency despite his being dispatched as the primary officer responsible for this emergency. (RE 27, PageID 750)

The internal investigation determined that McNeal failed to properly respond to an emergency call on June 26, 2018: "P.O. McNeal was inexcusably delayed in his response by not going code 3, taking 52 seconds to leave the police station once he exited the [police department], and by not exiting the [police department] until 1:54 [minutes] after being dispatched." (RE 27-7, PageID 1018). McNeal has never been able to provide any reason to justify his inexcusable delay. (RE 27, PageID 773.)

The investigation also determined that McNeal violated traffic laws when responding to the call on June 26, 2018. McNeal drove 51 miles per hour ("MPH")

8

in a 40 MPH speed limit zone on Reed Hartman Highway, and 46 MPH in a 25 MPH zone on Plainfield Rd. (RE 27, PageID 785:4-18). Notably, because McNeal did not respond Code 3 with his lights and siren in operation, he was not permitted to speed, especially not so egregiously without the protection of lights and sirens. (RE 27, PageID 785:15-23). The investigation also concluded that June 26th was not the first time McNeal failed to properly respond Code 3 in an emergency situation. (Id). The investigation also concluded that McNeal was not familiar with Department policies—a requirement of his job. (RE 27-7, PageID 1020).

In addition to the policy violations that occurred during McNeal's June 26, 2018 response to an emergency call, the internal investigation found that, McNeal consistently defied the Department's rules regarding the use of the cruiser's video recording system and his microphone. During the internal investigation, it was discovered that McNeal repeatedly and purposefully violated the Blue Ash Police Department's cruiser camera policy, and then was untruthful when asked about that conduct. Specifically, from January 1, 2018 through July 15, 2018, McNeal worked a total of 109 days. McNeal violated the policy regarding properly checking the in-car camera at the beginning of his shift on all 109 days. In addition to this daily policy violation, McNeal also violated the policy requiring the use of a microphone when using the in-car camera on 29 of the 37 traffic stops he made during the same time period. (RE 27, PageID 723:14-19; RE 27-7, PageID 1002). McNeal was aware

9

that he was required to use his microphone during traffic stops. (RE 27, PageID 733:6-14, 795-96).

Finally, perhaps the most alarming of McNeal's actions was McNeal's dishonesty throughout the course of the investigation. (RE 27-7, PageID 1000). Prior to beginning his investigatory interview, McNeal signed a warning that stated, "I am being ordered to truthfully and completely answer all questions presented to me and that failure to answer truthfully or completely will be the basis for charges of insubordination which may result in discipline, including dismissal." (RE 27, PageID 777:21-778:6; RE 27-7, PageID 1021). When asked if he checks his mobile video recording system daily, McNeal responded that he checks it "most of the time." (RE 27-7, PageID 1021). However, McNeal's video system had gone unchecked from January 1, 2018 until his termination. (Id.) Additionally, when asked about his failure to use his microphone, McNeal responded that he "always had one." (Id). However, the investigation revealed that McNeal did not use a microphone for 29 of the 37 traffic stops he conducted in 2018. (Id). McNeal's routine refusal to use the MVR in appropriate circumstances left the department without potentially important evidence in these traffic stops. (RE 25, PageID 345).

McNeal also lied while attempting to excuse his late arrival in response to the June 26, 2018 call. (Id.) McNeal stated that his late arrival to Frisch's was acceptable because he "heard people arrive at the scene before [he did]." (Id.) Notwithstanding

that he was dispatched as the primary officer on the call. However, this is impossible because there were no radio communications noting anyone arrived on scene prior to him. (Id.) Thus, the investigation's final finding against McNeal was that he had been dishonest on these three separate occasions. This conclusion that McNeal was dishonest strikes at the core of his ability to perform his duties as a police officer. (RE 27-7, PageID 1001). A key responsibility for an officer is to testify truthfully in court proceedings, and following the investigators' determination that he was dishonest, prosecutors would be required to disclose information about McNeal's dishonesty to defense counsel should McNeal be required to testify. (Id.). Such determination of dishonesty was found to "seriously damage[] his credibility as a witness, which inhibits his ability to perform his essential job duties." (Id.).

On September 7, 2018, at the conclusion of the investigation, Lt. Gerhardt and Lt. Pohlman presented their recommendation that McNeal's employment be terminated to Chief Noel. (Id.) In reaching this conclusion, the Lieutenants based their recommendation on the five violations found in the internal investigation and considering McNeal's disciplinary issues prior to the June 26, 2018 call. (Id.) When presented with the investigation's findings, viewed in the aggregate with McNeal's other discipline, Chief Noel accepted the Lieutenants' recommendation. (Id.) In the Chief's recommendation letter to David Waltz, City Manager, Chief Noel wrote the following:

11

After a careful and thorough review of all information contained within this internal investigation, I concur and recommend that Officer McNeal's employment with the City of Blue Ash Police Department be terminated for the reasons set forth in the Report and Violations set forth above. (RE 29-6, PageID 1779, Noel Decl. Ex. E).

Thereafter, McNeal had the opportunity to attend a pre-disciplinary hearing, accompanied by his union representative. (RE 27, PageID 766:9-12). However, McNeal ultimately chose to waive his hearing and did not attend. (RE 27, PageID 766:13-23). Subsequently, McNeal was terminated. Following his termination, McNeal challenged the termination before a neutral arbitrator. However, after the arbitrator weighed the evidence presented by the City of Blue Ash and McNeal, he upheld the termination decision. (RE 27, PageID 769-771; RE 25, 25-1, 25-2).

In addition to the investigation of McNeal, Charron was also investigated for his slow response time related to the June 26, 2018 call. (RE 27-7, PageID 1003; Decl. Noel, Ex. F). The investigation into Charron's conduct concluded that: (1) he was untruthful during the investigation; (2) he failed to properly respond to an emergency call; (3) he failed to act in his capacity as a supervisor with respect to the June 26, 2018 call; and (4) he failed to be familiar with departmental policy. (RE 29-7, PageID 1781, Decl. Noel, Ex. F). Ultimately, the investigation recommended that Charron also be terminated. (Id.) Like McNeal, Charron was given the opportunity to retire; however, unlike McNeal, Charron chose to retire in the fall of 2018, in lieu of termination. (RE 27-1, PageID 1117, Decl. Noel ¶ 9).

## IV.   SUMMARY OF THE ARGUMENT

McNeal's age was not the but-for reason for his termination or previous discipline. Rather, Appellees had legitimate non-discriminatory reasons for the actions taken, including McNeal's termination. Appellant McNeal has not presented reliable and admissible evidence that the reasons for Appellees' actions were merely a pretext for discrimination.

McNeal cannot establish that the environment at the Blue Ash Police Department was sufficiently hostile or abusive to rise to the level of a hostile work environment. McNeal points to generalized unsubstantiated comments, hearsay, and speculation of other officers to attempt to support his claims. However, the instances of purported criticism and unfair treatment by Appellees are at best, "ordinary tribulations of the workplace," which are not actionable under the ADEA.

Finally, McNeal's state law age discrimination is time-barred in that he failed to file his claim within 180 days of any alleged discrimination. Notwithstanding, the state law age discrimination claim fails for all the same reasons the ADEA claim must fail.

## V.   LAW AND ARGUMENT

### A.   <u>Standard of Review</u>

This Court reviews de novo the district court's grant of summary judgment. *Marks One Car Rental, Inc. v. Auto Club Grp. Ins. Co.,* 761 F. App'x 516, 521 (6th

Cir. 2019) citing *Luna v. Bell*, 887 F.3d 290, 297 (6th Cir. 2018). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Id.* citing Fed. R. Civ. P. 56(a). "For this determination, the Court must review all facts in a light that is most favorable to, and draw all reasonable inferences in favor of, the nonmoving party." *Id.* citing *Byrd v. Tenn. Wine & Spirits Retailers Ass'n*, 883 F.3d 608, 613 (6th Cir.), *cert. granted*, ––– U.S. ––––, 139 S.Ct. 52 (2018). But the nonmoving party may not use "speculation, conjecture, or fantasy" to avoid summary judgment. *Id.* citing *K.V.G. Props., Inc. v. Westfield Ins. Co.*, 900 F.3d 818, 823 (6th Cir. 2018) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). Instead, it must put forth more than "a scintilla of evidence" that would allow a jury to reasonably find in its favor. *Id.* citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986). Here, Appellant did not satisfy his burden to overcome summary judgment and cited only to self-serving statements and affidavits, speculation, and conjecture without pointing to sufficient probative evidence that would permit a finding in his favor.

   **B.    The District Court Correctly Viewed the Evidence Properly Before it when Granting Appellees' Summary Judgment on McNeal's ADEA Claim**

   "An employer may make employment decisions 'for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action

is not for a discriminatory reason.'" *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 329 (6th Cir. 2021)(citations omitted); see also *Ruiz v. Ohio Dep't of Rehab. & Corr.*, No. 1:09 CV 994, 2010 WL 2232415, at *12 (N.D. Ohio, May 28, 2010) citing *Brown v. Renter's Choice, Inc.,* 55 F.Supp.2d 788, 795 (N.D. Ohio, 1999) (quoting *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir. 1984)).   Here, the Appellees had nondiscriminatory reason for terminating McNeal's employment.   While McNeal may not agree that he should have been fired, he has not shown that his termination was because of his age. The District Court Properly Determined That Plaintiff Could Not Establish a Claim of Age Discrimination

Appellees did not take any action against McNeal because of his age.  In his Second Amended Complaint, McNeal alleged violations under the Age Discrimination in Employment Act ("ADEA").  Under the ADEA, it is unlawful for an employer:

> to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

29 U.S.C. § 623(a).  To establish his ADEA claim, McNeal was "required to either 'present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment.'" *Carter v. University of*

*Toledo*, 349 F.3d 269, 272-273 (6th Cir.2003) (citation omitted). Here, he did neither.

McNeal did not allege or argue that there was any direct evidence that Appellees discriminated against him because of his age. Therefore, he was required to show discrimination by indirect or circumstantial evidence. To show discrimination by means of indirect or circumstantial evidence, McNeal must make out a *prima facie* case by showing that 1) he was a member of a protected class (older than 40 years old); (2) he suffered an adverse employment action; (3) he was qualified for the position held; and (4) he was replaced by someone outside of the protected class or similarly situated non-protected employees were treated more favorably. *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 326 (6th Cir.), *cert. denied sub nom. Pelcha v. Watch Hill Bank*, 142 S. Ct. 461 (2021) *citing Geiger v. Tower Auto.*, 579 F.3d 614, 622–23 (6th Cir. 2009).

If an employee makes out a *prima facie* case, "the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action." *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir.2010). If the employer does so, the burden of production then shifts back to the employee to show that the employer's stated reason was mere pretext. *Id.* During this time, however, the burden remains on the employee to show that age was the "but-for cause" of the adverse employment action. *Id.*, citing *Geiger, supra*

at 620 (6th Cir. 2009). Meeting the "because of" requirement in the statute is no simple task. McNeal was required to prove by a preponderance of the evidence that age was the 'but-for' reason for his termination. *Pelcha, supra* citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78, 129 S.Ct. 2343 (2009). This requires showing that age was *the* determinative reason McNeal was terminated; that is, he must show "that age was the 'reason' that the employer decided to act." *Pelcha, supra* at 323-324 citing *Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 529 (6th Cir. 2014) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 350–51, 133 S.Ct. 2517 (2013)). Under *Gross*, satisfying but-for cause requires McNeal to show that age "*had a determinative influence on the outcome*" of the employer's decision-making process. *Id.* citing *Gross*, 557 U.S. at 176, 129 S.Ct. 2343 (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701 (1993)).

1. McNeal cannot establish a *prima facie* case of age discrimination

McNeal cannot establish the third and fourth prong of the *prima facie* case of age discrimination.  First, the evidence presented by Appellees is overwhelming that at the time of his termination McNeal was failing to meet legitimate expectations for his positions.  As such, he was not qualified for this position. *Thomas v. AT & T Servs., Inc.*, 933 F. Supp. 2d 954, 965 (N.D. Ohio 2013), aff'd (Oct. 29, 2013) citing *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1160 (6th Cir.1990); *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 929 (6th Cir.1999).

17

From 2016 through 2018, McNeal received five official disciplinary actions including one Documented Oral Reprimand, one Written Reprimand, and three separate suspensions without pay. (RE 27-7, PageID 1002). McNeal argues, however, that because he had 30 years of experience, that alone demonstrates that he was qualified. However, experience alone is not demonstrative of qualifications and satisfaction of the employer's expectations. An employee's self-serving statements that he or she is qualified or meeting expectations, without further evidence, are insufficient to demonstrate that the employee was meeting the legitimate expectations of their employer. *See Jingyuan Feng v. Rockwell Collins, Inc.*, 2017 WL 5895000, 2017 U.S. Dist. LEXIS 178865, *28-29 citing *Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005) ("Shanklin states her teaching ability far exceeded any other teacher at the Positive School. However, Shanklin failed to offer any evidence to suggest she met the Board's legitimate expectations.") An employee does not demonstrate that he or she was meeting the employer's legitimate expectations merely by demonstrating that, in the past, he or she met the employer's legitimate expectations. *Id.* citing *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010) (characterizing the past performance of an employee as "irrelevant" because the inquiry is not whether the employee had previously met the employer's legitimate expectations but rather is whether the employee was meeting the employer's legitimate expectations at the time of termination).

18

Additionally, to satisfy the fourth prong of the *McDonnell Douglas* test—that he was treated differently than similarly situated non-protected individuals—McNeal was "required to prove that all of the *relevant* aspects of his employment situation [are] 'nearly identical' to those of [non-protected employee's] employment situation." *Brown v. Metro. Gov't of Nashville & Davidson Cty.*, 722 F. App'x 520, 527–28 (6th Cir. 2018) citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)). To be similarly situated in the disciplinary context, an employee "'must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). As this Court has explained, "[i]t is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly situated *in all respects.*" *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610–11 (6th Cir. 2002) citing *Mitchell, supra* 964 F.2d at 583 (emphasis in original).

McNeal has not pointed to any similarly situated individuals that engaged in the same conduct, dealt with the same supervisor, and were subject to the same standards. This is not only true as to his reprimands beginning in 2016, but also the

incidents that ultimately led to his termination in 2018. Moreover, regarding the Frisch's incident, it is clear, that the only legitimate comparator is Sgt. Charron, who was subjected to the same investigation and disciplinary actions as McNeal. The only difference being, Charron chose to retire prior to being terminated and McNeal did not. Without explanation, McNeal includes a list of citations of testimony in which he claims demonstrate "incidents that were identical, committed by younger officers, yet none of them received discipline." (App. RE 23, PageID 32-33.) However, those citations are not as claimed.

- Jim Kelley claims he responded to a suspected overdose, non-breather without lights and siren and received no discipline. (RE 43, PageID 2972.) However, there is no indication if Appellees knew of the incident, when it occurred, who is supervisor was or even if he is younger than McNeal.

- Mark Zeigler does not specifically identify any incident in which a younger individual in a similar situation with the same supervisor was treated differently. (RE 30, PageID 1784, RE 32, PageID 1871-76)(claiming he did things differently but worked under a different chief).

- Connolly and Riley provide do not identify similarly situated individuals treated differently. (RE 44, 45.)

- Sgt. Charron claimed a younger officer—Officer Huff—allegedly did not respond to a scene with lights and sirens. (RE 55, PageID 3794.) However, Sgt. Charron testified that he did not conduct the investigation or interview of Officer Huff (RE 35, PageID 2168); he did not recall if the Code 3 dispatch was to a non-breather or even what it was for (RE 35, PageID 2169); the supervising sergeant was Sergeant Schlie (Id.); and he did not know if Huff was actually even dispatched to the incident (Id.) (In contrast, McNeal was dispatched Code 3 to a non-breather; was the primary officer dispatched to the scene and his

supervisor was actually, Sgt. Charron. (Id.)

- Sgt. Stewart, without any specific examples, generally claims all officers violate traffic laws while not under lights and sirens daily. (RE 51, PageID 3421-22.)

- Sgt Stewart claimed another officer, Ballman, ran a red light during a pursuit at 75 m.p.h. (RE 51, PageID 3368-69.) However, Sgt. Stewart acknowledged he was not involved in the situation, he only viewed a video of the pursuit. (Id.)  He also claims this same officer did not activate her body camera on an incident—which he acknowledged was a violation of policy—and to his knowledge, it was not addressed. (Id. at PageID 3372.) However, Stewart testified that Officer Ballman had a different supervisor (Id.); he was not involved in her discipline and when asked if she did receive discipline, would he have any reason to dispute it, Sgt. Stewart said, "I would not, no." (RE 51, PageID 3437.) The fact is that Sgt. Stewart had no personal knowledge as to whether or not Officer Ballman was disciplined.

- McNeal also claims a younger officer—Officer Owen—was not disciplined for leaving a report outstanding or late. (RE 55, PageID 3794-95.) McNeal relies upon the testimony of Sgt. Charron.  However, Sgt. Charron testified that he did not actually know whether Officer Owen was disciplined; if Lt. Gerhardt was aware of the incident; or if Chief Noel was aware of the incident. (RE 35, PageID. 2218-19.) Sgt. Charron was not involved in McNeal's discipline or investigation related to this issue to know whether it was even comparable to Officer Owen. (RE 35, PageID 2217.)

- McNeal also points to the testimony of Fritts trying to draw a false similarity between the untimely submission of a police report (for which McNeal was properly disciplined according to Blue Ash policies) and alleged backdating of quarterly evaluations of Blue Ash employees by Lt. Gerhardt. (App. Doc. 23, P. 15). Even assuming that Lt. Gerhardt backdated employee reviews, the alleged conduct is dissimilar from McNeal's policy violations relative to completing police reports. Plus, it involves a Lieutenant who is not similar to McNeal in all relevant respects.

21

- McNeal claims another officer, Officer Taylor, did not receive discipline for failing to have a completed medical report when he returned from leave. (RE 55, PageID 3795.) However, a review of Plaintiff's own sworn testimony is that he was not even sure it was "Taylor or another officer" (RE 27, PageID 691-2); he did not know where he got this information from (RE 27, PageID 692); and other than what he claims he heard, he has no other information to suggest this actually occurred. (RE 27, PageID 693.)

- McNeal claims Officer Roach "could only identify an informal bluebook violation for other officers not turning in reports on time." (RE 55, PageID 3795.) However, Officer Roach actually testified that she believed there may have been other people who got behind on reports, that command staff may have been aware of the fact, and although she could not specifically identify a single individual, they may have not received discipline commensurate with what Plaintiff received. (RE 54, PageID 3644.) Officer Roach specifically stated that she did not have any dates or names as to her claims. (Id.)

McNeal simply cannot, and does not, point to any similarly situated individuals outside of the protected class that were treated more favorably than him. McNeal's citations to the record lack the requisite personal knowledge regarding any disparate treatment and provide only inadmissible lay opinions unsupported by facts, speculation, and hearsay.

      2.  <u>Appellees articulated a legitimate non-discriminatory reason for its actions which McNeal cannot show was a pretext for discrimination</u>

Appellees have articulated legitimate non-discriminatory reasons for McNeal's discipline and his termination and McNeal does not argue differently. McNeal was terminated for the following reasons:

- Failing to properly respond to an emergency call in violation of Blue Ash Policy;
- Violating traffic laws while not under lights and siren (code 3) in violation of Blue Ash Policy;
- Failing to be familiar with department policy in violation of Blue Ash policy;
- Failing to properly check and utilize Mobile Audio Video in violation of Blue Ash Policy; and
- Untruthfulness during an investigative interview in violation of Blue Ash Policy.

(RE 27-7, PageID 1000.)

As such, the burden shifts back to McNeal to show that Appellees' reasons are pretextual. McNeal must show pretext by demonstrating that the proffered reason (1) had no basis in fact; (2) did not actually motivate the action; or (3) was insufficient to warrant the action. *Tillman v. Ohio Bell Tel. Co.,* 545 F. App'x 340, 349 (6th Cir.2013) (citations omitted). Proving pretext requires more than an employee's own subjective belief that he was the victim of discrimination or retaliation. *Hollowell v. Soc'y Bank & Tr.*, 78 Ohio App. 3d 574, 580–81, 605 N.E.2d 954, 958 (1992) citing *La Grant v. G & W Mfg. Co.*, 748 F.2d 1087 (6th Cir. 1984); *Branson v. Price River Coal Co.*, 853 F.2d 768 (10th Cir. 1988). Intentional discrimination cannot be proven by conclusory allegations made by the employee. *Id*. citing *Ackerman v. Diamond-Shamrock Corp.*, 670 F.2d 66, 69-70 (6th Cir. 1982). Similarly, self-serving statements by the employee that he believes he was discriminated against are not enough. *Id*. citing *Locke v. Commercial Union Ins. Co.*, 676 F.2d 205 (6th Cir. 1982). A plaintiff must allege more than a dispute over the

facts upon which her discharge was based in order to establish pretext. *Tribble v. Cincinnati Bell Tel.*, No. 1:09-CV-568, 2011 WL 3627402, at *7 (S.D. Ohio May 4, 2011), *report and recommendation adopted*, No. C-1-09-568, 2011 WL 3627284 (S.D. Ohio Aug. 17, 2011) citing *Braithwaite v. Timken Co.,* 258 F.3d 488, 493–494 (6th Cir.2001).

Also, where the plaintiff alleges there was no basis in fact for the adverse employment action, he cannot establish pretext simply because the reason for his discharge was ultimately shown to be incorrect "as long as an employer has an honest belief in its proffered non-discriminatory reason[.]" *Hookman v. Aaron's Inc.*, No. 2:15-CV-2318, 2017 WL 1155925, at *13 (S.D. Ohio Mar. 27, 2017), citing *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001); *Smith v. Chrysler Corp.,* 155 F.3d 799, 806 (6th Cir. 1998)). Here, based upon the internal investigation and the subsequent recommendation by Chief Noel, City Manager Waltz had an honest belief in the basis for the recommendation to terminate his employment based on five violations of policy by McNeal. (RE 27-7, PageID 1000-1045.) To determine whether an employer had an "honest belief in the proffered basis for the employee's discharge, the Court examines whether the employer has established "'reasonable reliance' on the particularized facts that were before it at the time the decision was made." *Id.* (quoting *Abdulnow v. Campbell Soup Supply Co.,* 502 F.3d 496, 502–03 (6th Cir. 2007); *Braithwaite, supra* at 494).

Thereafter, the burden is on the employee to demonstrate that the employer's belief was not honestly held. An employee's bare assertion that the employer's proffered reason has no basis in fact is insufficient to call an employer's honest belief into question and fails to create a genuine issue of material fact. *Joostberns v. United Parcel Services, Inc.*, 166 Fed.Appx. 783, 791 (6th Cir.2006)(citations and internal quotation marks omitted). An employee is required to show "more than a dispute over the facts upon which the discharge was based." *Braithwaite, supra* at 493–94 . Additionally, the courts do not require that the employer's decision-making process that is under scrutiny "be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir.1998). As long as the employer held an honest belief in its proffered reason, "the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless." *Id.* at 806; *see also Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001).

It is undisputed that the Blue Ash Police Department Policy 308 governs an officer's response to calls. (RE 27, PageID 710.) More specifically, it provides for the safe and appropriate response to all emergency and non-emergency situations. (Id.) McNeal acknowledged that the policy requires an officer responding to an

emergency call shall proceed immediately; shall continuously operate emergency lighting equipment and sirens; and shall drive with due regard to the safety of all persons. (RE 27, PageID 711-713.) Further, if an officer is not responding as an emergency call, he must observe all traffic laws. (Id, PageID 713-716.) The policy further provides that in continuing an emergency call response, if in an officer's judgment roadway conditions and traffic do not permit a response with lights and sirens, the office "shall promptly notify Dispatch." (Id, PageID 171, RE 27-5, PageID 996.) McNeal conceded that on the date of the Frisch's incident, he was dispatched to an emergency call. (RE 27, PageID 719.) He further admitted that contrary to policy, he did not run lights and sirens and did not report to dispatch that he was not responding with lights and sirens. (Id.) McNeal also testified that it was a violation of the policy. (Id.) Furthermore, he could not dispute the speeds he ran in responding to the Frisch's call and conceded that in exceeding the lawful speed limit, he would have violated policy. (RE 72, PageID 785.)

McNeal further testified that on the date of the incident, he was familiar with the Mobile Audio Video Policy No. 423. (RE 27, PageID 719-20.) He understood that syncing his audio and video equipment was an important piece of law enforcement. (RE 27, PageID 720.) McNeal admitted receiving training on the use of the mobile audio video equipment and knew that one of the things he was supposed to do before each shift was to sync the audio and video equipment. (RE

26

27, PageID 723.)   Finally, McNeal does not dispute the evidence presented by
Appellees (RE 29, PageID 1102-3), that he was not fully honest during the
investigation of the incident.  As such, McNeal has failed to establish pretext under
the first method.

Similarly, McNeal has not shown that the legitimate non-discriminatory
reason given by Appellees for their actions was not the actual reason. In arguing the
second basis, McNeal was required to admit the factual basis underlying the
employer's proffered explanation and further admit that such conduct *could* motivate
dismissal. The employee's attack on the credibility of the proffered explanation is,
instead, an indirect one. In such cases, the employee attempts to indict the credibility
of his employer's explanation by showing circumstances which tend to prove that an
illegal motivation was *more* likely than that offered by the employer. In other words,
the plaintiff argues that the sheer weight of the circumstantial evidence of
discrimination makes it "more likely than not" that the employer's explanation is a
pretext, or coverup. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078,
1084 (6th Cir. 1994). McNeal cannot establish pretext under this method.

McNeal has pointed to absolutely no evidence of any animus towards
individuals that participate in the DROP program.  In fact, despite pointing to several
individuals that have participated in the DROP program, McNeal testified that he is
the only individual he knows that did not retire voluntarily. (RE 27, PageID 695-8.)

It is well settled that "[m]ere personal beliefs, conjecture and speculation are insufficient to support an inference of [ ] discrimination." *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 724 (6th Cir. 2006) citing *Woythal v. Tex–Tenn Corp.,* 112 F.3d 243, 247 (6th Cir.1997) (quoting *Chappell v. GTE Products Corp.,* 803 F.2d 261, 268 (6th Cir.1986)) (first alteration in original).  It is not enough to disbelieve the employer's proffered nondiscriminatory reasons rather one must *believe* the employee's explanation of intentional discrimination." *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 246–47 (6th Cir. 1997) citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 519, 113 S.Ct. 2742 (1993). In other words, McNeal was required to show that Appellees intentionally discriminated against him because of his age. *Id. citing Phelps v. Yale Sec., Inc.,* 986 F.2d 1020, 1023 (6th Cir.1993); *Chappell v. GTE Products Corp.,* 803 F.2d 261, 265–66 (6th Cir.1986).  McNeal has failed to provide such evidence.

Instead, McNeal attempts to argue that both the first and second types of pretext exist—that the reason for his termination and discipline had no basis and fact but at the same time admits that the factual basis underlying the Appellees' proffered explanation and that such conduct could motivate dismissal. (App. RE 23, PageID 39.) McNeal cannot on one hand claim the reason is false and on the other hand admit the facts underlying the reason and admit that it could be a motivation for termination. Notwithstanding, McNeal makes sweeping claims that he was singled

28

out for higher scrutiny due to his age and that other officers believed his discipline was too harsh. However, he points to nothing in the record to support these claims other than the speculation, opinion and self-serving statements of his friends or himself. The opinions of McNeal's friends that the actions of Appellees were based on age do not constitute such evidence. *Weller v. Titanium Metals Corp.*, 361 F.Supp.2d 712, 722 (S.D.Ohio 2005); *Peters v. Lincoln Elec. Co.,* 285 F.3d 456, 474 (6th Cir.2002) (affidavits from co-workers did little, if anything, to rebut employer's reason.) If every employee could create a triable issue of fact by proffering a positive *opinion* from a friend or co-worker, courtrooms would be overwhelmed with deciding employment issues that are within the realm of company management. *Id.* (internal citation omitted.)

The third showing consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). "Ordinarily, to establish the insufficiency of the proffered reasons, the plaintiff must show that 'other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated' [its] actions towards the plaintiff." *Bonner v. Scope Servs.*, No. 1:12-cv-32, 2015 WL

29

4465038, at *6, at *19 (S.D. Ohio July 21, 2015) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). Similar to the standard for the *prima facie* case, to show pretext on disparate treatment, a plaintiff must provide evidence that "employees outside the protected class[ ] were not disciplined even though they engaged in substantially identical conduct to that which [the employer] contends motivated its discipline [of the plaintiff]." *Pelcha, supra* at 328 citing *Miles v. South Central Human Resource Agency, Inc.*, 946 F.3d 883, 893 (6th Cir. 2020)(quoting *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012)). In examining another employee outside the protected class, a court must consider whether the employee: (1) "dealt with the same supervisor," (2) was "subject to the same standards," and whether they (3) "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). However, as noted above, McNeal cannot point to any admissible evidence of other employees who were not fired or disciplined for engaging in substantially identical conduct. Moreover, courts have noted that the employee may not simply rely upon his *prima facie* evidence, but must, instead, introduce additional evidence of age discrimination. *Manzer, supra* at 1084. Here, McNeal does not do so.

30

Additionally, McNeal's claim fails because age was not the sole or "but-for" reason for his termination.  To prevail on a claim under the ADEA, it is not enough for the plaintiff to show that age was a motivating factor in the adverse action; rather, the ADEA's "because of" language requires that a plaintiff "prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision." *Scheick v. Tecumseh Public Schools*, 766 F.3d 523, 529 (6th Cir.2014), citing *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 177–78, 129 S.Ct. 2343 (2009) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141–43, 147, 120 S.Ct. 2097 (2000)).  *Gross* clarified that the burden of persuasion does not shift to the employer in an ADEA case, "even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Id.* citing *Gross*, 557 U.S. at 180, 129 S.Ct. 2343; *see Geiger,* 579 F.3d at 621 (recognizing abrogation of prior precedent in direct evidence cases under the ADEA).

Meeting the ADEA's "because of" threshold "is no simple task." *Id.* It **"requires showing that age was *the* determinative reason they were terminated,"** in other words, that it was **"the 'reason' that the employer decided to act."** *Taylor v. Methodist Le Bonheur Healthcare*, No. 219CV02796MSNATC, 2021 WL 2934596, at *4 (W.D. Tenn. June 22, 2021), *report and recommendation adopted*, No. 2:19-CV-2796-MSN-ATC, 2021 WL 2932747 (W.D. Tenn. July 12,

2021) citing *Pelcha* at 324 (quoting *Scheick, v. Tecumseh Pub. Schs.*, 766 F.3d 523, 529 (6th Cir. 2014))(emphasis in original). McNeal is required to demonstrate that he was terminated because of his age through either direct or circumstantial evidence. *Pelcha, supra* at 324 *citing Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 529 (6th Cir. 2014). He has not and cannot do so.  Rather, McNeal was terminated because he failed to properly respond to an emergency call; he violated traffic laws while not operating his cruiser under lights and sirens; he was not familiar with the departments policies; he failed to properly check and utilize his Mobile Audio Video equipment and was untruthful during his investigative interview. (RE 27-7, PageID 1000.)

This Court has previously held that "a *prima facie* case plus evidence of pretext would not survive a motion for summary judgment where 'the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.'" *Taylor v. Methodist Le Bonheur Healthcare*, No. 219CV02796MSNATC, 2021 WL 2934596, at *7 (W.D. Tenn. June 22, 2021), *report and recommendation adopted*, No. 2:19-CV-2796-MSN-ATC, 2021 WL 2932747 (W.D. Tenn. July 12, 2021) citing *Alberty v.*

*Columbus Twp.*, 730 F. App'x 352, 360 (6th Cir. 2018)(quoting *Reeves v. Sanderson*

*Plumbing Products, Inc., 530* U.S. 133, 148, 120 S. Ct. 2097 (2000).

Finally, it is important to note that McNeal challenged his termination in arbitration before an independent and unbiased arbitrator. There was a hearing in which evidence was presented. (RE 25.) An independent, neutral, and unbiased adjudicator had the power to overturn the decision to terminate McNeal and did not do so. This is highly probative of the absence of discriminatory intent in that termination. *See Collins v. New York City Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002) citing *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 60 n. 21, 94 S.Ct. 1011 (1974) (determination of how much weight to give a particular arbitration decision is left to court's discretion and depends on facts and circumstances of each case); *accord Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 743 n. 22, 101 S.Ct. 1437 (1981); *United States v. Int'l Bhd. Of Teamsters,* 954 F.2d 801, 809–10 (2d Cir.1992). In *Collins*, the Second Circuit Court of Appeals held that while a negative arbitration decision rendered under a CBA does not preclude a [discrimination] action by a discharged employee, a decision by an independent tribunal that is not itself subject to a claim of bias will attenuate a plaintiff's proof of the requisite causal link. *Collins v. New York City Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002) citing *Gardner–Denver,* 415 U.S. at 45–60, 60 n. 21, 94 S.Ct. 1011.

Based upon all the foregoing, Appellees respectfully request that this Court uphold the District Court's decision granting Appellees summary judgment on McNeal's claim of age discrimination under the ADEA.

## C. **McNeal failed to overcome his burden on summary judgment on his hostile work environment age discrimination claim**

The actions complained of by McNeal do not amount to a claim for hostile work environment.  In order to establish a *prima facie* case for hostile work environment based upon his age, McNeal must show that: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on the plaintiff's age; (4) the harassment unreasonably interfered with the plaintiff's work performance by creating a hostile, offensive, or intimidating work environment; and (5) there is employer liability. *Chancellor v. Coca-Cola Enterprises, Inc.*, S.D. Ohio, Western Division No. C-1-08-65, 2009 WL 4674058, *4 (2009). "The Supreme Court states that, in making these assessments, courts must consider 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Berryman v. SuperValu Holdings, Inc.*, S.D. Ohio No. 3:05cv169, 2010 WL 1257843, *7 (March 31, 2010)*, quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367 (1993).  No such facts exist in this case.

"Further, to constitute a 'change in the terms and conditions of employment,' conduct must be 'extreme.'" *Id.,* citing *Faragher v. Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275 (1998). "To be actionable, it is not enough that the conduct at issue is merely offensive, *** '[i]nstead, the workplace must be permeated with 'discriminatory intimidation, ridicule or insult' sufficiently severe or pervasive to alter the conditions of employment.'" *Gonzalez v. Hostetler Trucking, Inc.,* S.D. Ohio No. 2:11-cv-137, 2013 WL 5182835, *5 (Sept. 12, 2013) (internal quotations omitted). "As this Court has explained, '[t]he determination of whether harassing conduct is sufficiently severe or pervasive to establish a hostile work environment is not susceptible to a 'mathematically precise test.'" *Id.,* citing *Hawkins v. Anheuser–Busch, Inc.,* 517 F.3d 321, 333 (6th Cir.2008). "[I]solated incidents" of racial remarks 'will not amount to discriminatory changes in the terms and conditions of employment.'" *Id.,* quoting *Long v. Ford Motor Co.,* 193 Fed.Appx. 497, 502 (6th Cir.2006) (holding that episodes of harassment through racial remarks involving only two individuals on two discrete instances were not pervasive enough to constitute a hostile or abusive working environment).

The instances of purported criticism and unfair treatment by Chief Noel, Lt. Gerhardt and Lt. Pohlman are best characterized as "ordinary tribulations of the workplace," which are not actionable under the ADEA. *See Broska v. Henderson,* 70 Fed.Appx. 262, 270 (6th Cir. 2003)(finding purported retaliatory harassment not

sufficiently severe or pervasive where employee claimed that supervisors continually monitored him and subjected his work to criticism). McNeal cannot point to any incidents of ageist remarks, ridicule or offensive conduct. The ADEA, like Title VII, was not meant to be, and courts must ensure that they do not become, a "general civility code." *See Faragher,* 524 U.S at 788, 118 S.Ct. 2275 (citation omitted). "Not everything that makes an employee unhappy" qualifies as retaliation or discrimination, for "[o]therwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Smart v. Ball State University,* 89 F.3d 437, 441 (7th Cir.1996) (internal quotations and citation omitted). Conduct that a reasonable person would find neither hostile nor abusive is beyond [the ADEA's] purview. *See Harris,* 510 U.S. at 21, 114 S.Ct. 367. *See Broska,* 70 Fed.Appx. at 270 (no hostile work environment claim where supervisor ignored employee, encouraged coworkers to do the same, criticized her work, and withheld her mail); *Diamond v. U.S. Postal Service,* 29 Fed.Appx. 207, 213 (6th Cir.2002) (supervisors unjustifiably threatened employee with discipline); *see also Baker v. City of Toledo, Ohio,* No. 3:05 CV 7315, 2007 WL 1101254, at *9 (N.D.Ohio April 11, 2007)(no hostile work environment claim where employee was required to take training on personal time, request a shift change in writing, denied access to the Chief, given a negative evaluation, and given a traffic citation all over the course of one year). In contrast,

36

where this Court has found an employer's actions to be sufficiently severe or pervasive, the allegations were far more severe than those in the instant case. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 793 (6th Cir. 2020) (supervisor called employee on the telephone over thirty times to harass her, sat outside her office making faces at her, followed her home from work and made an obscene gesture at her, destroyed a television she watched at work, and threw roofing nails onto her home driveway on several occasions); *Jordan v. City of Cleveland,* 464 F.3d 584, 598–99 (6th Cir.2006)(senior firefighter was made to do menial and dirty chores usually reserved for junior firefighters, was denied "acting time," was detailed to stations where he was the junior or only black firefighter, was belittled and branded as "difficult," had his gear stuffed into a basketball hoop and torn, and faced confrontation and threats not to take his complaints to his superiors).

In *Blackburn v. Shelby Cty.*, 770 F. Supp. 2d 896, 930–31 (W.D. Tenn. 2011), the court pointed to an instance out of the D.C. Circuit, *Hussain v. Nicholson, as* instructive. 435 F.3d 359 (D.C.Cir.2006). In *Hussain,* the D.C. Circuit found the plaintiff failed to make a showing that he was subjected to the type of conduct that would constitute a hostile work environment. Those acts included: (1) another employee's appointment as permanent Chief of Radiation Therapy, (2) heightened monitoring by supervisors, (3) poor performance evaluations, (4) delay in forwarding retirement application forms, (5) denial of counsel during a discussion

37

about retirement and failure to provide a written copy of retirement options, (6) denial of access to his personnel file, (7) termination threats, and (8) failure to address insubordination by other employees. *Id* at 366. Though noting that the plaintiff's work environment was "hardly ideal," the court concluded that "no reasonable jury could find it 'abusive' ...." *Id.* at 367.

This case is factually similar. Though McNeal may subjectively believe that he was exposed to hostile treatment, no reasonable jury could find that that the actions of Appellees rise to the level of sufficiently severe or pervasive to alter the conditions of employment and create an abusive or threatening working environment. The only actions McNeal contends constituted harassment was discipline for what he characterizes as "minor policy violations." (App. RE 23, PageID 47.) However, he has not pointed to any evidence as to any conduct that interfered with his ability to perform his job, and thus, without other hostile or offensive behavior, these things do not create an objectively intimidating, hostile, or offensive work environment. *Brown v. Metro. Gov't of Nashville & Davidson Cty.*, 722 F. App'x 520, 525–26 (6th Cir. 2018) *citing Agnew v. BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002) ("[C]riticism in performance reviews and institution of performance improvement plans, alone, do not constitute objectively intolerable conditions."); *see also Ferguson v. Snow*, 185 Fed.Appx. 456, 463 (6th Cir. 2006) (finding that repeated denials of promotions with only one alleged incident of an

38

overtly discriminatory remark "standing alone, is not sufficient to establish a hostile work environment"); *Keever v. City of Middletown*, 145 F.3d 809, 813 (6th Cir. 1998)("[c]onversations between an employee and his superiors about his performance does not constitute harassment simply because they cause the employee distress."); *Hale v. ABF Freight Sys., Inc.*, 503 F. App'x 323, 338 (6th Cir. 2012) (even an overwhelming barrage of criticism, "does not rise to the level of severity or frequency required to sustain a hostile work environment claim.")   As such, Appellees request that this Court deny McNeal's appeal as to his hostile work environment claim.

### D. The District Court Properly Determined that McNeal's State Law Age Discrimination Claim was Time-Barred

The District Court properly determined that McNeal's state law age discrimination claim is time-barred. *McNeal v. City of Blue Ash,* No. 1:19-CV-01072, 2023 WL 2184598, at *5 (S.D. Ohio Feb. 23, 2023) citing *Taglione v. Charter Communications, LLC*, 842 F. App'x 988, 991 (6th Cir. 2021). Pursuant to the version of the Revised Code Section 4112.02 that was in effect at the time Appellant filed his complaint in December 2019, McNeal was required to bring his claim "by instituting a civil action, within one-hundred eighty days after the alleged unlawful discriminatory practice occurred." *Id.*  Here the latest date of any alleged "discriminatory practice" was the date of McNeal's termination on November 28, 2018.

Appellant argues for the first time on appeal that he timely filed his state law age claim by filing a charge of discrimination with the EEOC. (RE 23, PageID 49). However, "an argument not raised before the district court is waived on appeal." *Johnson v. Ford Motor Co.*, 13 F.4th 493, 503 (6th Cir. 2021) citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008); *Frazier v. Jenkins*, 770 F.3d 485, 497 (6th Cir. 2014) ("Generally, we will not address arguments raised for the first time on appeal.")

Notwithstanding the foregoing, although McNeal filed an EEOC charge, that only addressed the claim under the ADEA. The Ohio Supreme Court has held that any age discrimination claim, "premised on a violation described in R.C. Chapter 4112, must comply with the one-hundred-eighty-day statute of limitations period set forth in former R.C. 4112.02(N)." *McNeely v. Ross Corr. Inst.*, Franklin App. No. 06AP-280, 2006 WL 2949014, 2006-Ohio-5414, ¶ 19 citing *Bellian v. Bicron Corp.* (1994), 69 Ohio St.3d 517, syllabus. When an age discrimination claim is premised on R.C. 4112.02 or 4112.99, a plaintiff must file the claim within 180 days of the alleged discriminatory act. *Id; see also Oker v. Ameritech Corp.,* 89 Ohio St.3d 223, 2000-Ohio-139 (the statute of limitations for age discrimination is 180 days beginning to run on the date of the employee's termination from his employment.)

Here, McNeal was terminated on November 28, 2018. He did not file his first complaint asserting state law claims until December 17, 2019, well beyond the 180-

day limitations period. McNeal cites to no authority that his state law claims were tolled pending the EEOC investigation on only the ADEA claim. Thus, McNeal's claims under R.C. 4112.02 and 4112.99 fail.

Even if this Court were to determine that McNeal did timely file his state law age discrimination claim, for all the reasons set forth above as to his age claim under the ADEA, McNeal has not established that he suffered age discrimination. Age discrimination claims brought under Ohio law are analyzed under the same standards applicable to the Age Discrimination in Employment Act of 1976 ("ADEA"). *White v. Kroeschell Facility Servs., Inc.*, No. 3:20-CV-130, 2021 WL 4399743, at *3 (S.D. Ohio Sept. 27, 2021) citing 29 U.S.C. § 623(a); *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005). Accordingly, this Court should uphold the decision of the District Court.

## VI.  <u>CONCLUSION</u>

Based on all the foregoing, the District Court did not err when it granted summary judgment in favor of Appellees on all of McNeal's claims against them. Therefore, this Court should affirm the rulings of the District Court.

<div style="margin-left: 40%;">

Respectfully submitted,

<u>/s/Dawn M. Frick</u>
Dawn M. Frick (0069068)
8163 Old Yankee Street, Suite C
Dayton, Ohio 45458
(937) 222-2333
(937) 204-1636 (fax)

</div>

dfrick@sdtlawyers.com
*Trial Attorney for Appellees City of Blue Ash and David Waltz and Scott Noel, in their official capacities*

## VII.  CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements.

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 10,113 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Times New Roman in 14-point font.

/s/Dawn M. Frick
Dawn M. Frick (0069068)
8163 Old Yankee Street, Suite C
Dayton, Ohio 45458
(937) 222-2333
(937) 222-1970 (fax)
dfrick@sdtlawyers.com
*Counsel for Defendants-Appellees*

Dated: August 3, 2023

42

## VIII. <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 4, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Dawn M. Frick_____
Dawn M. Frick (0069068)

## IX.   ADDENDUM

### Appellees' Designation of Relevant Court Documents:

Appellees, pursuant to 6 Cir. R. 30(g), hereby designate the following relevant court documents:

| Description of Entry | Date Filed | Record Entry No. | Page ID# |
|---|---|---|---|
| Complaint | 12/17/19 | 1 | 1-66 |
| Amended Complaint | 2/10/20 | 2 | 67-132 |
| Second Amended Complaint | 6/6/20 | 12 | 146-212 |
| Answer to Second Amended Complaint | 6/26/20 | 14 | 215-222 |
| Arbitration Transcript | 6/17/21 | 25 | 255-406 |
| City's Arbitration Exhibits | 6/17/21 | 25-1 | 407-461 |
| Union's Arbitration Exhibits | 6/17/21 | 25-2 | 462-591 |
| Gary McNeal Deposition Transcript | 6/18/21 | 27 | 594-981 |
| Exhibit A - Deposition of Gary McNeal | 6/18/21 | 27-1 | 982-990 |
| Exhibit B - Deposition of Gary McNeal | 6/18/21 | 27-2 | 991 |
| Exhibit C - Deposition of Gary McNeal | 6/18/21 | 27-3 | 992-993 |
| Exhibit D - Deposition of Gary McNeal | 6/18/21 | 27-4 | 994 |
| Exhibit E - Deposition of Gary McNeal | 6/18/21 | 27-5 | 995-996 |
| Exhibit F - Deposition of Gary McNeal | 6/18/21 | 27-6 | 997-999 |
| Exhibit G - Deposition of Gary McNeal | 6/18/21 | 27-7 | 1000-1045 |
| Exhibit H - Deposition of Gary McNeal | 6/18/21 | 27-8 | 1046-1047 |

| | | | |
|---|---|---|---|
| Exhibit I - Deposition of Gary McNeal | 6/18/21 | 27-9 | 1048-1054 |
| Exhibit J - Deposition of Gary McNeal | 6/18/21 | 27-10 | 1055 |
| Exhibit K - Deposition of Gary McNeal | 6/18/21 | 27-11 | 1056 |
| Exhibit L - Deposition of Gary McNeal | 6/18/21 | 27-12 | 1057-1062 |
| Exhibit M - Deposition of Gary McNeal | 6/18/21 | 27-13 | 1063-1074 |
| Defendant City of Blue Ash, David Waltz and Chief Scott Noel's Motion for Summary Judgment | 6/18/21 | 28 | 1075-1094 |
| Defendant David Waltz and Chief Scott Noel's Motion for Summary Judgment, in their Individual Capacity and Exhibits | 6/21/21 | 29, 29-1 through 29-7 | 1116-1781 |
| Declaration of Mark Ziegler | 7/5/2021 | 30 | 1784-1787 |
| Deposition of Mark Zeigler | 7/5/2021 | 32 | 1789-2044 |
| Declaration of Ed Charron | 7/6/2021 | 33 | 2045-2048 |
| Deposition of Ed Charron (Vol.I) | 7/6/2021 | 35 | 2050-2309 |
| Deposition of Ed Charron (Vol.II) | 7/6/2021 | 36 | 2310-2405 |
| Declaration of Chris Zielinski | 7/6/2021 | 37 | 2406-2407 |
| Deposition of Chris Zielinski | 7/6/2021 | 39 | 2409-2682 |
| Declaration of Ken Schrand | 7/6/2021 | 40 | 2683-2685 |
| Deposition of Ken Schrand | 7/6/2021 | 42 | 2687-2971 |
| Declaration of Jim Kelley | 7/6/2021 | 43 | 2972-2974 |
| Declaration of John Connolly | 7/6/2021 | 44 | 2975-2977 |
| Declaration of Rich Riley | 7/6/21 | 45 | 2978-2979 |

| Deposition of William Fritts | 7/7/2021 | 47 | 2981-3187 |
|---|---|---|---|
| Deposition of Beth Roach (Vol.I) | 7/7/2021 | 49 | 3189-3295 |
| Deposition of Todd Stewart | 7/7/2021 | 51 | 3297-3556 |
| Deposition of Beth Roach (Vol.II) | 7/11/2021 | 54 | 3560-3765 |
| Response in Opposition to Summary Judgment | 7/19/2021 | 55 | 3766-3803 |
| City of Blue Ash Reply in Support of Motion for Summary Judgment | 8/09/2021 | 56 | 3806-3825 |
| Individual Defendants' Reply in Support of Motion for Summary Judgment | 8/09/2021 | 57 | 3826-3846 |
| Opinion and Order granting Summary Judgment | 2/23/2023 | 63 | 3875-3895 |
| Clerk's Judgment | 2/23/2023 | 64 | 3896 |
| Notice of Appeal | 3/2/2023 | 65 | 3897 |