# United States Court of Appeals
# for the Sixth Circuit
### CASE NO. 23-3180

**GARY MCNEAL**

*Plaintiffs/Appellants*

v.

**CITY OF BLUE ASH**, **DAVID WALTZ AND SCOTT NOEL**

*Defendants/Appellees*

:

On Appeal from the U.S. District Court, Southern District of Ohio, 1:19-cv-01072

### PLAINTIFF'S/APPELLANT'S REPLY BRIEF

Zachary Gottesman
Gottesman & Associates
404 E. 12th Street, First Floor
Cincinnati, OH 45202
Tel:   513/651-2121

Christopher Wiest (OH 77931)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
Tel:   513/257-1895
chris@cwiestlaw.com
*Counsel for Plaintiffs/Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS.......................................................... i

TABLE OF AUTHORITIES ................................................... ii

STATEMENT OF THE CASE AND FACTS ........................................1

SUMMARY OF THE ARGUMENT ........................................2

ARGUMENT ...............................................................3

   I.  McNeal established a prima facie case of age discrimination ........................3

   II.  McNeal adduced sufficient evidence to establish the reason for termination was pretextual…………………………………………………………………..12

   III. McNeal adduced sufficient evidence to establish a prima facie ADEA hostile work environment claim**Error! Bookmark not defined.**.....................................................................21

   IV. McNeal's state law age discrimination claim was not time-barred……...…...26

CONCLUSION ...........................................................27

# TABLE OF AUTHORITIES

*Abeita v. Transam. Mailings, Inc.*, 159 F.3d 246 (6th Cir. 1998).. ........................23

*Argyriou v. David A. Flynn, Inc.*,
  2021 U.S. Dist. LEXIS 36454 (N.D. Ohio Feb. 26, 2021)................................27

*Barnett v. Pa Consulting Group, Inc.*, 35 F. Supp. 3d 11 (6th Cir. 2014)... ...........19

*Becton v. Detroit Terminal of Consol. Freightways*,
  687 F.2d 140 (6th Cir. 1982)... .............................................................20

*Berryman v. SuperValu Holdings, Inc.*, 2010 WL 1257843 (SDOH 2010)... .........25

*Bowman v. Shawnee State Univ.*, 220 F.3d 456 (6th Cir. 2000)... ........................22

*Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339 (6th Cir. 2012)... ............... 12, 13

*Clark Cty. School Dist. v. Breeden*, 532 U.S. 268 (2001).. ...................................22

*Clayton v. Meijer, Inc.*, 281 F.3d 605 (6th Cir. 2002).... .......................................7, 8

*Crawford v. Medina Gen. Hosp.*, 96 F.3d 830 (6th Cir. 1996)... ..........................21

*Crawford v. Newport News Indus. Corp.*, 2018 WL 4561671 (E.D. Va. 2018)... ..23

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998)...........27

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)............................................22

*Flones v. Beaumont Health System*, 567 Fed.Appx. 399 (6th Cir.2014)................13

*Geiger v. Tower Auto*, 579 F.3d 614 (6th Cir. 2009)......................................... 3, 12

*Hance v. Norfolk S. Ry.*, 571 F.3d 511 (6th Cir.2009).............................................20

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993)... .............................. 22, 23, 25

*House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 463 (6th Cir. 2015).... ........3

ii

*Jackson v. Fedex Corp. Servs., Inc.*, 518 F.3d 388 (6th Cir. 2008).........................11

*Jingyuan Feng v. Rockwell Collins, Inc.*,
   2017 WL 5895000, 2017 U.S. Dist. LEXIS 178865 (NDIA 2017)... ..................4

*Joostberns v. United Parcel Servs., Inc.*, 166 F.Appx. 783 (6th Cir. 2006)............19

*Laws v. HealthSouth N. Ky. Rehab. Hosp. Ltd. P'ship*,
   508 F. App'x 404 (6th Cir. 2012)................................................................... 3, 4, 5

*Levitin v. Northwest Community Hosp.*, 64 F.Supp.3d 1107 (N.D. Ill. 2014)... .....23

*Linkletter v. W. & S. Fin. Grp., Inc.*, 851 F.3d 632, 640-641 (6th Cir. 2017).........27

*Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078 (6th Cir.1994)...12, 13

*Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405 (6th Cir. 2008).......11

*McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir.1990).. .................4

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986)... .......................................20

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir.1992)... ...........................8

*Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004)... .......................6, 8

*Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010)....5

*O'Donnell v. Univ. Hosps. Cleveland Med. Ctr.*,
   833 Fed. Appx. 605 (6th Cir. 2020)...................................................................26

*Paasewe v. Action Group, Inc.*, 530 Fed. Appx. 412 (6th Cir. 2013)... ..................23

*Perry v. McGinnis*, 209 F.3d 597 (6th Cir. 2000).....................................................8

*Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535 (6th Cir. 2002).............................4, 6

*Romano v. Hudson City Sch. Dist.*, 772 Fed. Appx. 258 (6th Cir. 2019)................27

*Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274 (6th Cir. 2012)... ...............19

*Shanklin v. Fitzgerald*, 397 F.3d 596 (8th Cir. 2005)…...............................................4

*Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*,
  178 F.3d 414 (6th Cir. 1999).... ...........................................................................6

*Snyder v. Pierre's French Ice Cream Co.*, 589 Fed. Appx. 767 (6th Cir. 2014).....21

*Speed Way Transp., LLC v. City of Gahanna*,
  2023 U.S. App. LEXIS 5135 (6th Cir. 2023)... ...................................................11

*Taglione v. Charter Communs.*, LLC, 842 Fed. Appx. 988 (6th Cir. 2021).... .......26

*Warf v. U.S. Dept. of Veterans Affairs*, 713 F.3d 874, 878 (6th Cir. 2013).... . 21, 22

*White v. Burlington Northern & Santa Fe Ry.*, 364 F.3d 789 (6th Cir. 2004)... ......23

**Statutes**

29 U.S.C. § 623(a)……………………………………………………...3, 21

42 U.S.C. § 2000e-2..................................................................................... 21

R.C. 2744.03…………………………………………………………………27

R.C. 4112.02………………………………………………………………..26, 27

R.C. 4112.14……………………………………………………… 2, 26, 27

## STATEMENT OF THE CASE AND FACTS

Appellees largely take the facts in the light most favorable to them, ignore those that favor McNeal, and then claim they win. However, in an effort to be brief, we recount these facts as they apply to each argument made by the Appellees. Officer McNeal was previously employed as a police officer with the City of Blue Ash Police Department. (Depo. McNeal, Doc. 27 at p.12, PageID#605.) He was scheduled to retire on February 1, 2021. *Id.* Prior to his termination, he was a 17-year veteran with the City of Blue Ash Police Department. (*Id.* at p.15, PageID#608.) And, in fact, he had more than 33 years of law enforcement experience. (*Id.* at pp. 43-47, PageID#636-640.)

Prior to 2016, McNeal had an exemplary record with the department. (Zeigler Depo., Doc. 32, p. 163, PageID#1951.) Both current and retired seasoned patrol officers—McNeal's colleagues—described his service as an officer in positive, highly favorable terms. (Charron Depo. Vol. I, Doc. 35, p. 33, pps. 193-194, 288 PageID#2082, 2242-2243; Charron Depo. Vol. II., Doc. 36, p. 288, PageID#2360; Ziegler Depo., Doc. 32, p. 163, PageID#1951; Stewart Depo., Doc. 51, p. 25, PageID#3321; Schrand Declaration, Doc. 40, ¶12, PageID#2684.)

Despite his almost perfect record, upon Chief Noel's promotion in 2016, McNeal was suddenly the target of numerous disciplinary infractions for minor policy violations, which were rarely, if ever, invoked upon other officers. Appellees

insist this sudden change was merely the result of Chief Noel's new leadership priorities and a desire to hold everyone in the department to a higher standard. However, evidence demonstrates this standard was applied disparately to McNeal and other personnel were not held to a similar standard. A review of each incident shows the scrutiny and discipline applied to McNeal was unusual, disparate, and designed to create a disciplinary paper trail that previously did not exist with the 33-year veteran law enforcement officer.

## SUMMARY OF THE ARGUMENT

The District Court improperly granted Defendants summary judgment. McNeal's age was the but-for reason for his termination and previous discipline. Evidence demonstrates Appellees had no legitimate non-discriminatory reasons for the actions taken, including McNeal's termination. Appellant McNeal presented specific, reliable and admissible evidence that the reasons for Appellees' actions were merely a pretext for discrimination.

McNeal established, through competent evidence, that the environment at the Blue Ash Police Department was sufficiently hostile or abusive to rise to the level of a hostile work environment, including specific instances where his treatment was inconsistent with established practices and more severe than other younger officers. Appellees claim the incidents were merely the "ordinary tribulations of the workplace," runs counter to the breadth of evidence presented.

2

Finally, McNeal's state law age discrimination claim is not time-barred because McNeal filed EEOC charges within the six-month period of his discharge. (Sec. Am. Compl., Doc. 12, PageID#155). And, because we deal here with a discharge, the six-year statute of limitations applies. R.C. 4112.14(B) provides for a remedy against an employer that is identical to the federal remedy.

## ARGUMENT

### I.    McNeal established a prima facie case of age discrimination

The District Court Failed to correctly analyze the evidence before it. The ADEA prohibits an employer from "discriminating against an employee over the age of forty because of the employee's age." *House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 463 (6th Cir. 2015). The Age Discrimination in Employment Act of 1967 ("ADEA") prohibits employers from making adverse employment decisions because of an employee's age. 29 U.S.C. § 623(a). Age discrimination can be proven with direct or circumstantial evidence. *Geiger v. Tower Auto*, 579 F.3d 614, 620 (6th Cir. 2009). Here, the evidence supports proof through circumstantial evidence.

To establish a prima facie case of age discrimination, the ADEA plaintiff "must show that: (1) she was over 40 years old; (2) she suffered an adverse employment action; (3) she was qualified for the position she held; and (4) she was either replaced by a person outside the protected class or treated differently than similarly-situated individuals." *Laws v. HealthSouth N. Ky. Rehab. Hosp. Ltd.*

3

*P'ship*, 508 F. App'x 404, 410-11 (6th Cir. 2012) (*citing Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 538-39 (6th Cir. 2002)).

The District Court did not take issue with the fact that the evidence adduced established the first three prongs; (1) Officer McNeal was over 40 years old - in fact he was 62 years old and the oldest officer in patrol.  (Depo. McNeal, Doc. 27 at p.12, PageID#605); (2) He suffered an adverse employment action when his employment was terminated.  (*Id.* at 100-104, PageID#693-697); (3) McNeal was qualified for his position with more than 30 years of experience.  (*Id.* at pp. 43-47, PageID#636-640.)

Appellees argue McNeal fails to establish he was qualified for his position merely because of his tenure; *citing Jingyuan Feng v. Rockwell Collins, Inc.*, 2017 WL 5895000, 2017 U.S. Dist. LEXIS 178865, *28-29 (NDIA 2017) *citing Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005); and similarly *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1160 (6th Cir.1990); where the court found McDonald unable to present more than "mere conclusory allegations" that the employer made "too big a deal out of his alleged people problems;" the court finding McDonald was unqualified for his position. However, those facts are very distinguishable from this case. Appellees violate the summary judgment standard when they deliberately ignore that McNeal presented more than merely experience as evidence of his qualifications. Witnesses and peers, experienced and qualified police officers and

supervisors that observed McNeal's performance, presented substantive testimony that McNeal was qualified and did his job well. (Charron Depo. Vol. I, Doc. 35, p. 33, pps. 193-194, 288 PageID#2082, 2242-2243; Charron Depo. Vol. II., Doc. 36, p. 288, PageID#2360; Ziegler Depo., Doc. 32, p. 163, PageID#1951; Stewart Depo., Doc. 51, p. 25, PageID#3321; Schrand Declaration, Doc. 40, ¶12, PageID#2684.)

Rather than confront this evidence, Appellees instead cite *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010), which they argue makes past performance irrelevant (the case does not actually stand for that proposition). Here, McNeal again presents not only a long-term positive record of effective work product, but a substantive list of experienced, knowledgeable personnel, observing McNeal's performance and operating in the same position as McNeal, as evidence of competency. The only evidence presented by Appellees is their overwhelmingly minor list of disciplinary infractions they levied against him that the District Court found constituted evidence of pretext.

The District Court, did however, determine that McNeal failed to establish the fourth prong, because he did not show that he was replaced by someone outside the protected class, though did adduce significant evidence that his termination was pretextual. (Opinion, Doc. 63 at PageID#3889-3895.) But the District Court's analysis ignored the fact that the fourth prong can also be established with evidence that the Plaintiff was "treated differently than similarly-situated individuals." *Laws*,

5

508 F. App'x 404, 410-11, *Policastro, Inc.*, 297 F.3d 535, 538-39; *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004). Again, "the fourth element [of the prima facie case] may be satisfied by showing that persons outside the protected class were retained in the same position or that there was some other evidence indicating that the employer did not treat age neutrally in deciding to dismiss the plaintiff." *Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 421 (6th Cir. 1999).

The record is replete with evidence that McNeal was not treated equally to others outside the protected class, see discussion, *supra*, at pp. 3-28. (Depo. McNeal, Doc. 27, at 67, 87-89, 93-95, 96-99, PageID#660, 680-682, 686-688, 689-692; Depo. Fritts, Doc. 47, pp. 14-16, 18-19, 22-23, 63-64 PageID#2994-2996, 2998-2999, 3002-3003, 3043-3044; Depo. Roach, Doc. 49, pp. 16-20, 46-48, PageID#3204-3208, 3234-3236; Depo. Stewart, Doc. 51, at pp. 17, 25, 63-64, PageID#3313, 3321, 3359-3360; Depo. Schrand, Doc. 42, at pp. 166-167, 170-171, 177-178, 181, 183-184, 192-194, PageID#2852-2853, 2856-2857, 2863-2864, 2867, 2869-2870, 2878-2880; Depo. Charron, Doc. 36, pp. 285-287, PageID#2357-2359; Charron Dec., Doc. 33, ¶13, PageID#2046.)

More concerning, and additional evidence of a strategic and pretextual plan to terminate or force McNeal to retire, is Chief Noel's response to a seemingly minor infraction that never resulted in discipline for other officers. Sergeant Charron

testified that Chief Noel expressed excitement and was "giggling" when relaying that McNeal was going to be disciplined for submitting a late medical report. (Doc. 35, Charron Depo. Vol. I, p. 193, PageID#2242.) (Doc. 51, Stewart Depo., pps. 38-40, PageID#3334-3336; Doc. 49, Roach Depo., p. 58, PageID#3246.)

After building a targeted and disparate disciplinary record in a period of two years, McNeal was harassed and vulnerable to disparate scrutiny on every administrative task and call for service. This was never more evident than in Appellees' response to the medical incident that ultimately resulted in McNeal's termination. It took McNeal 1 minute and 54 seconds to leave the station and enter his vehicle to respond, and another 52 seconds before leaving the station parking lot. (Doc. 27, McNeal Depo., p. 159-160, PageID#752-754.) Officers have testified that this is not a long time. (Doc. 35, Charron Depo. Vol. I, pps. 122-123, PageID#2171-2172.) While in route, McNeal exercised his discretion not to engage his vehicle lights or sirens (Doc. 27, McNeal Depo, p. 165-166, PageID#758-759) because he was following the ambulance, the primary medical responder. (Doc. 27, McNeal Depo., p. 165, PageID#758.) Appellees statements that "P.O. McNeal was 'inexcusably delayed in his response'" is in direct conflict with their additional claims he violated the speed limit in his response (RE 27-7, PageID 1018; RE 27, PageID 785:4-18), indicating there was no response by McNeal that would have withstood the despotic scrutiny they applied and the sham argument they

manufactured to try to justify it before this Court. (Doc. 27-7, McNeal Depo., Ex. G, PageID#1000.)

Appellees equally miscite *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610–11 (6th Cir. 2002) *citing Mitchell, supra* 964 F.2d at 583, suggesting McNeal failed to make a proper comparison of his treatment to that of other employees; essentially failing to show that the "comparables" are "similarly situated in all respects."

To dissuade the court from recognizing the relevant similarities between comparables, Appellees attempt to identify irrelevant differences, arguing they are dispositive. However, in *Clayton*, 281 F.3d 605, 610–11, *citing Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir.1992), this Court observed that while plaintiff must show that he is treated differently than similarly situated employees from outside the class, "courts should not demand exact correlation, but should instead seek relevant similarity." *See, also*, *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000).  In *Perry*, this Court held that officers were similarly situated where they were "supervised by the same officials, subject to the same standards, and charged with the same duties," just as McNeal and his comparators were.  McNeal easily reaches a threshold of relevant similarity with the evidence presented, a portion of which follows:

- Jim Kelley provided a personal account he responded to a suspected overdose, non-breather without lights and siren and received no discipline. (Doc. 43, PageID 2972.) Kelley operated under a similar chain of command of supervision, and committed virtually the same

conduct for which McNeal was terminated without any differentiating or mitigating circumstances that should impact disciplinary outcomes.

- Sgt. Charron testified to a substantially similar account of a younger officer—Officer Huff—who failed respond to a scene with lights and sirens. (Doc. 55, PageID 3794.) While the exact emergency was not recorded, the response was a Code 3 emergency, the exact level to which McNeal responded. (Doc. 35, PageID 2169); the supervising sergeant was Sergeant Schlie, however, the entire chain of command is responsible for disciplinary decisions and would have reviewed and approved discipline making the supervisor on duty irrelevant to the disciplinary decisions being made.

- Sgt. Stewart, presenting far from a "lay opinion," recounts a general policy and acknowledgement permitting all officers to violate traffic laws while not under lights and sirens. (Doc. 51, PageID 3421-22.) While not a specific incident, it presents first-hand knowledge of how policy is applied to other personnel, and the disparate manner in which it was applied to McNeal.

- Sgt. Stewart also provided another specific incident involving Officer Ballman, who violated traffic laws (a policy for which McNeal was terminated) ran a red light during a pursuit at 75 m.p.h. (Doc. 51, PageID 3368-69.) Appellees then argue it is not a comparable because Sgt. Stewart was not directly involved, and only viewed a video of the pursuit. (neither factor being necessary to determine whether an individual is similarly situated).

- Sgt. Stewart further accounts this same officer did not activate her body camera on an incident—which he acknowledged was a violation of policy—and to his knowledge, was not addressed. (Doc. 51 at PageID 3372.) This was the same action for which McNeal was disciplined and under the same leadership and Department supervision. Essentially, the same people responsible for the imposition of discipline with McNeal.

- McNeal recounts a younger officer—Officer Owen—was not disciplined for leaving a report outstanding or late. (Doc. 55, PageID 3794-95.) McNeal relies upon the testimony of Sgt. Charron who personally observed the violation. While Sgt. Charron testified that he

9

did not actually know if Officer Owens ever received discipline, Appellees were given the opportunity to discount this event and failed to demonstrate some form of comparable discipline ever occurred. (Doc. 35, PageID. 2218-19.) Appellees argue Sgt. Charron was not involved and was unable to draw a comparable between Officer Owens and McNeal (Doc. 35, PageID 2217.) However, this is not a requirement when analyzing similarly situated individuals.

- While McNeal was disciplined for failing to complete or supplement reports in the specified time, several officers testified that other officers (all similarly situated), including younger ones, were not similarly disciplined for submitting late reports or failing to properly submit their reports into the software system. (Doc. 39, PageID#2575; Doc. 35, PageID#2082, 2216; Doc. 49, PageID#3240-3241; Doc. 33, PageID#2047.)

- Officer Roach had never seen such an intense level of discipline for simply turning in a late report. (Doc. 49, PageID#3241), and while unable to identify a specific officer as a comparable, it should be noted that all officers completing similar reports would be reasonably comparable. (Doc. 54, PageID#3643.) Supervisory officers described the discipline levied against McNeal for this offense as excessive. (Doc. 51, PageID#3340-3341.)

- McNeal and Officer Fritts recount the backdating of quarterly evaluations of Blue Ash employees by Lt. Gerhardt. (App. Doc. 23, P. 15). Appellees argue that Lt. Gerhardt ignoring required completion dates when he backdated employee reviews, is completely dissimilar from McNeal submitting a police report on the required date. Both reports are administrative in nature and document Department activity. The real difference involves the purposeful and fraudulent change in submission dates by Lt. Gerhardt to cover the violation. Again, not enough to discount the incident as dissimilar.

- Audits of microphone usage, such as was applied to McNeal before he was discipline, were "unheard of" for other similarly situated officers. (Doc. 47, PageID#3035-3036; Doc. 51, PageID#3351-3352.)

- Supervisory officers described microphone use problems as a training issue when applied to other officers, rather than a disciplinary problem as applied to McNeal. (Doc. 51, PageID#3354-3355.) Sergeant Stewart, a patrol sergeant, stated microphone usage was treated as a training issue and discipline was typically not meted out. He also agreed that, particularly in McNeal's case, this would have been an area for targeted training as opposed to discipline, since McNeal was not the type of officer to ignore a requirement. (Doc. PageID#3355-3356.)

And, with such evidence, this Court has held a claim for actionable discrimination is established. *Speed Way Transp., LLC v. City of Gahanna*, 2023 U.S. App. LEXIS 5135 (6th Cir. 2023); *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405 (6th Cir. 2008). In *Martin*, as here, other witnesses corroborated the fact that other employees had committed similar "infractions," and were not fired, but the older employee was terminated. *Id*. at 406. There, as here, were a list of favored employees who were younger and outside the protected class and treated more favorably. *Id.* There, the district court rejected the comparators, but this Court explained that the comparators had to be the same in all *relevant* respects. And the Court explained that "[t]he prima facie showing is not intended to be onerous." *Id.* at 412, *citing Jackson v. Fedex Corp. Servs., Inc.*, 518 F.3d 388, 396 (6th Cir. 2008).

Here, numerous officers testified to specific and comparable incidents and infractions by younger officers that were not disciplined. Of course, the District Court never even reached the comparator analysis because it wrongly focused on whether someone had replaced McNeal, rather than whether others who were

11

similarly situated had not been disciplined for similar offenses, while McNeal was. That was error.  And the District Court's judgment should be reversed.

## II.    McNeal adduced sufficient evidence to establish the reason for termination was pretextual.

Defendants argue that they had a legitimate reason for the termination of McNeal, ignoring, of course, that the evidence established the contrary, and the District Court found their proffered justifications on this record pretextual.  If an employer attempts to offer legitimate reasons for the termination, a plaintiff can establish that these reasons are pretextual by proving that the proffered reasons (1) had no basis in fact; (2) did not actually motivate the adverse employment decision; or (3) were insufficient to motivate discharge. *Chattman v. Toho Tenax Am., Inc.,* 686 F.3d 339, 349 (6th Cir. 2012), construing *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994), *overruled on other grounds in Geiger*, 579 F.3d 614. The first category requires evidence that the proffered basis for the plaintiff's discharge never happened; the second requires the plaintiff admit the factual basis underlying the employer's proffered explanation and further admit that such conduct could motivate dismissal; while the third requires evidence that the conduct was considered trivial and would not lead to dismissal. *Chattman* at 349, citing *Manzer* at 1084.

McNeal has demonstrated the first two categories, through the testimony of both current and prior officers and supervisors. Officer after officer testified that this discipline was too harsh, disparate, and motivated by an animus toward older officers. Thus, Blue Ash's proffered reasons for his termination—violations of policy combined with progressive discipline—had no basis in fact because the Department singled him out for higher scrutiny due to his age.

The third way to establish a pretextual termination is to offer evidence that other employees, particularly employees outside the protected class, were not disciplined even though they engaged in substantially identical conduct to that which the employer contends motivated its discipline of the plaintiff, which is most at issue in this matter. *Chattman,* 686 F.3d 339, 349, *citing Manzer*, 29 F.3d 1078, 1084. The third type of pretext is a direct attack on the credibility of the employer's proffered motivation for disciplining the plaintiff. If the plaintiff demonstrates this, then the factfinder can infer illegal discrimination. "In other words, it creates a genuine, triable issue of material fact." *Id.*; *Flones v. Beaumont Health System*, 567 Fed.Appx. 399, 406 (6th Cir.2014).

McNeal has offered more than sufficient evidence of examples of other officers, including younger officers, who were not disciplined for the same conduct for which the Department repeatedly disciplined him. In addition to their general observations of heightened scrutiny and increased discipline for older officers, Blue

13

Ash officers described numerous examples of this. (Doc. 35, Charron Depo. Vol. I, pps. 34; 118-119, PageID#2083, 2167-2168; Doc. 51, Stewart Depo., p. 73, PageID#3369; Doc. 51, Stewart Depo., p. 75-76, PageID#3371-3371; Doc. 35, Charron Depo. Vol. I, pps. 33, 167, PageID#2082, 2216; Doc. 27, McNeal Depo., p. 225, PageID#818; Doc. 54, Roach Depo., Volume II, p. 173, PageID#3643.)

Furthermore, McNeal argues more than the sheer weight of the circumstantial evidence presented to support his claim; McNeal has provided evidence the reason given by Appellees was a contrived and discriminatory attempt to harass and subjugate older officers until they voluntarily retired or were terminated. This illegal motivation, a desire to eliminate senior officers, was the pretext for both the disparate discipline and the final termination to which McNeal was subjected.

The evidence and testimony by Blue Ash police officers recounts significantly more than "ordinary tribulations of the workplace" as suggested by Appellees. Blue Ash police officers have testified providing specific examples of older officers nearing retirement being subjected to more intense scrutiny than younger officers. (Doc. 30, Zeigler Declaration, ¶ 13, PageID#1785; Doc. 33, Charron Declaration; ¶ 13, 15, PageID#2046-2047; Doc. 37, Zielinski Declaration, ¶¶ 5, 8, PageID#2406-2407; Doc. 40, Schrand Declaration, ¶¶ 5-6, PageID#2683.) Specifically, current and former Blue Ash officers testified that older officers, nearing retirement, without a history of any significant prior discipline, were suddenly targeted under the new

14

administration. (Doc. 35, Charron Depo. Vol. I, pps. 32-33, PageID#2081-2082; Doc. 37, Zielinksi Declaration, ¶¶ 8, 11, PageID#2407; Doc. 40, Schrand Declaration, ¶ 8, PageID#2684.)  And, in particular with McNeal, officers testified he was subjected to a level of scrutiny and excessive discipline that would have been "difficult to survive" (Doc. 51, Stewart Depo., p. 25-26, PageID#3321-3322), involving harsh discipline for insignificant policy violations which younger officers were not subjected to. (Doc. 51, Stewart Depo. pps. 63-65, 73 PageID#3359-3361, 3369; Doc. 49, Roach Depo., p. 43-44, PageID#3231-3232.) Specific examples were provided including Officer Ballman, who drove through a red light at 75 miles per hour, failed to activate her mobile video on a stop and was not disciplined.  (Doc. 51, Stewart Depo., p. 73, PageID#3369; Doc. 51, Stewart Depo., p. 75-76, PageID#3371-3371.)

Officers testified that Chief Noel and Lt. Gerhardt deliberately conspired to terminate McNeal and other officers over the age of 40 by weaponizing and perverting existing policy and constantly scrutinizing their work. (Doc. 35, Charron Depo. Vol. I, pps. 81, 101, 126-127, PageID#2130, 2150, 2175-2176; Doc. 35, Charron Depo. Vol. I, p. 146, PageID#2195.)

Officer Schrand observed older employees being passed up for promotions while younger, far less qualified officers received them; he particularly describes Officer Fritts, a respected and qualified senior officer, being passed up for a

15

promotion, (Doc. 42, Schrand Depo., p. 74, PageID#2760.) and Jim Kelly, being forced back to street duty after working as a detective for years, in what was perceived as an effort to force him to retire. (Doc. 42, Schrand Depo., p. 75-78, PageID#2761-2764.) Jim Kelly retired after only 5 years in DROP, and almost 3 years short of the required date. (Doc. 42, Schrand Depo., p. 75-78, PageID#2761-2764.) Officer Schrand observed another older officer, Mike Bray, who was similarly targeted for increased scrutiny and harsh discipline for minor violations such as report issues. (Doc. 42, Schrand Depo., pps. 87-88, PageID#2773-2774.) McNeal, a senior officer with over 30 years, was the most recent example of a targeted strategy to weaponize the discipline system in an effort to terminate or retire older officers. A review of comparable discipline, infractions and outcomes involving younger officers, testimony by numerous personnel and disparate treatment received by McNeal expose age related bias.

Evidence established that the discipline issued to McNeal was disparate and other officers received far less discipline, or no discipline, for similar offenses, and the light/siren issue that Defendants argued was the basis for termination, other officers testified was commonplace and not punished. (Dec. Officer Jim Kelley, Doc. 43, PageID#2972; Dec. Mark Ziegler, Doc. 30, PageID#1784; Depo. Mark Zeigler, Doc. 32, PageID#1871-1876; Dec. Connolly, Doc. 44, PageID# 1784; Dec. Riley, Doc. 45, PageID# 1784; Dec. Charron, Doc. 33, PageID#2045; Depo. Ziegler,

16

Doc. 32, PageID#1890; Depo. Schrand, Doc. 42, PageID#2729-2733[1]; Depo. Frits, Doc. 47, PageID#3027-3029; Dec. Charron, Doc. 35, PageID#2216; Stewart Depo., Doc. 51, PageID#3421-3425.)   This testimony included specific individuals and incidents that were identical, committed by younger officers, yet none of them received discipline.  *Id.*

Evidence also established a pattern of targeting older officers for heightened scrutiny, removing them from their assignments without cause, and passing older officers over for premium positions in favor of younger, less experienced officers, with witnesses testifying to particular persons, examples, and incidents.  (Charron Declaration, ¶13, Doc. 33, PageID#2046; John Connolly Declaration, Doc. 44, PageID#2046; Schrand Depo., Doc. 42, PageID#2758, 2763; Charron Depo. Vol. II, Doc. 36, p. 285, PageID#2357; Fritts Depo, Doc. 47, PageID#3005.)  Officers Zelinski, Ziegler, Charron, Fritts all stated they observed how McNeal was targeted for discipline and investigation while other officers avoided the same scrutiny, some even coming forward to protest the obvious disparate treatment.  They testified this is a tactic they have observed with other older officers. (Doc. 47, Fritts Depo, PageID#3045-3046;  Doc. 37, Zelinski  PageID#2606-2407;  Doc. 30,  Ziegler, PageID#1785; Doc. 33, Charron, PageID#2046.)

---

[1] Officer Schrand's testimony was that even the Chief has made emergency runs without lights and sirens without consequence.  *Id.*

*Perhaps most significantly*, Officers were subjected to retaliation when they participated in this lawsuit by identifying disparate treatment. Officers were intimidated by the administration for testifying in this case or reporting misconduct, including the Chief of Police materially interfering with the lawsuit by calling a departmental meeting to tell the officers how he expected them to testify in this case. (Schrand Depo., Doc. 42, PageID#2871; Fritts Depo., Doc. 47, PageID#3041-3043; Roach Depo., Doc. 49, PageID#3260-3265; Stewart Depo., Doc. 51, PageID#3260-3265).

The record is replete with first-hand accounts from a wide array of current and former officers and supervisors, and specific examples of disparate treatment targeting older officers, none of which amounted to "speculation, opinion and self-serving statements" from "friends" as claimed by Appellees. The evidence, testimony, and pattern of disparate disciplinary practices on the record far exceeds speculation and conjecture. McNeal testified he was terminated because there was a pattern of discrimination towards older officers approaching retirement age. *Id.* at 100-104, PageID#693-697. The pretext for that was failing to activate lights and sirens in the run on June 28, 2016 to Frisch's. *Id.* at 21, 125-126, PageID#614, 718-719.

Furthermore, Appellants argue virtually all witness testimony in favor of McNeal should be disregarded as inadmissible lay opinion testimony as "in an

employment discrimination action ... Rule 701 bars lay opinion testimony that amounts to a naked speculation concerning the motivation for a defendant's adverse employment decision." *Barnett v. Pa Consulting Group, Inc.,* 35 F. Supp. 3d 11, 21-22 (6th Cir. 2014). However, in *Barnett* the court found the lay opinion testimony regarding good job performance was inadmissible specifically because Plaintiff's job performance was not at issue. Here, first hand observational testimony regarding job performance is relevant, as Appellees claim it the reason for McNeal's termination, as are first hand accounts of disparate treatment.

Despite the obvious pattern of disparate discipline and clear evidence of pretextual reasons for McNeal's termination, Appellees invoked the "honest belief" rule, which essentially allows the court to consider an employer's proffered reason as honest when the employer can establish that it reasonably relied on particularized facts that were before it when the decision is made. *Seeger v. Cincinnati Bell Tel. Co., LLC,* 681 F.3d 274, 285 (6th Cir. 2012), quoting *Joostberns v. United Parcel Servs., Inc.*, 166 F.Appx. 783, 791 (6th Cir. 2006).

The "honest belief" doctrine does not apply here. McNeal has demonstrated with sufficient factual basis that Blue Ash did not honestly rely on the proffered reasons for terminating him. Numerous current and former officers testified that the discipline involved was inappropriate for the infractions; they further portray a pattern of targeted scrutiny and excessive discipline applied to older officers at Blue

19

Ash which is not enforced against younger officers. (Doc. 35, Charron Depo. Vol. I, pps. 34; 118-119, PageID# 2083, 2167-2168; Doc. 51, Stewart Depo., p. 73, PageID#3369; Doc. 51, Stewart Depo., p. 75-76, PageID#3371-3371; Doc. 35, Charron Depo. Vol. I, pps. 33, 167, PageID#2082, 2216; Doc. 27, McNeal Depo., p. 225, PageID#818; Doc. 54, Roach Depo., Volume II, p. 173, PageID#3643.) McNeal has raised sufficient factual issues – more than bare assertions—that Blue Ash's reasons for discipline were pretextual; they were the result of a targeted scrutiny and a disguised effort to force McNeal, the oldest patrolman in the Department, out of his job.

Appellees further insist that the arbitrator's decision upholding the termination is "highly probative" of the absence of discriminatory intent. But this Court has rejected the principal that an arbitration decision is determinative of a plaintiff's discrimination claims; as such holding would limit "the plaintiff's opportunity to vindicate his statutory and constitutional rights." *Becton v. Detroit Terminal of Consol. Freightways*, 687 F.2d 140, 142 (6th Cir. 1982); see also *Hance v. Norfolk S. Ry.*, 571 F.3d 511, 519 (6th Cir.2009). Defendants failed to articulate any specific findings by the arbitrator that demonstrate an absence of age-based discrimination. Accordingly, the arbitration decision is not even persuasive authority in this case.

**III.    Plaintiff adduced sufficient evidence to establish a prima facie ADEA hostile work environment age discrimination claim**

McNeal was also entitled to proceed on his claims for hostile work environment. A hostile work environment requires the existence of severe or pervasive and unwelcome verbal or physical harassment because of a plaintiff's membership in a protected class. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66-67 (1986). Title VII of the Civil Rights Act makes it illegal for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA forbids the identical conduct when the discrimination is "because of such individual's age." 29 U.S.C. § 623(a)(1). To demonstrate a hostile work environment claim under the ADEA, a plaintiff must demonstrate that: (1) He is older than 40 years; (2) He was subjected to harassment, either through words or actions, based on age; (3) 'the harassment had the effect of unreasonably interfering with the employee's work performance and creating an objectively intimidating, hostile, or offensive work environment'; and (4) there is some basis for holding the employer liable. *Snyder v. Pierre's French Ice Cream Co.*, 589 Fed. Appx. 767 (6th Cir. 2014), *citing Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834–35 (6th Cir. 1996).

In terms of analyzing the third factor, the conduct must be "severe or pervasive enough to create an environment that a reasonable person would find hostile or

abusive and the victim must subjectively regard that environment as abusive." *Warf v. U.S. Dept. of Veterans Affairs*, 713 F.3d 874, 878 (6th Cir. 2013), *quoting Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000). In determining whether a work environment is objectively hostile or abusive, courts consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (*quoting Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23 (1993)). Courts must determine whether the workplace is "so permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir.2008)(*quoting Harris*, 510 U.S. at 23).

"Workplace conduct is not measured in isolation." *Clark Cty. School Dist. v. Breeden*, 532 U.S. 268, 270 (2001). So "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris*, 510 U.S. at 21. In determining whether an actionable hostile work environment claim exists, the court looks to all the circumstances, including "the frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.

In *White v. Burlington Northern & Santa Fe Ry.*, 364 F.3d 789, 803-804 (6th Cir. 2004), this Court determined that adverse employment action existed where the discriminated individuals were assigned to "more arduous" and "dirtier" jobs. See *also Abeita v. Transam. Mailings, Inc.*, 159 F.3d 246, 250-252 (6th Cir. 1998) (continual comments or harassing acts like to be pervasive, establishing hostile work environment); *Paasewe v. Action Group, Inc.,* 530 Fed. Appx. 412, 416 (6th Cir. 2013) (unresponsiveness to complaints, and repeated acts that demonstrate racial animus in the workplace sufficient for hostile work environment claim).

Further, courts have determined that employers exercising a "double standard," whereby discipline is used to harass and damage a particular group while sweeping similar acts of other employees under the rug creates a hostile work environment. *Levitin v. Northwest Community Hosp.*, 64 F.Supp.3d 1107, 1125 (N.D. Ill. 2014); *Crawford v. Newport News Indus*. Corp., 2018 WL 4561671, *13 (E.D. Va. 2018), report and recommendation adopted in part, 2018 WL 2943445 (black plaintiffs demonstrated factual issues of hostile environment when they presented evidence that certain supervisors applied double standards regarding expectation of worker performance, worker standards and worker supervisions;

black workers complained of white supervisors micro-managing their work, looking over their shoulders, regularly challenging them when they did not do the same to white workers; black workers complained of being followed, monitored and timed on bathroom and other breaks, while their white counterparts were ignored).

The record before this Court establishes this same type of hostile, pervasive double standard; numerous officers and supervisors repeatedly testified as to the pattern of harsher discipline against McNeal and older officers, including excessive discipline for minor policy violations which Blue Ash did not exercise against other officers. (Dec. Officer Jim Kelley, Doc. 43, PageID#2972; Dec. Mark Ziegler, Doc. 30, PageID#1784; Depo. Mark Zeigler, Doc. 32, PageID#1871-1876; Dec. Connolly, Doc. 44, PageID# 1784; Dec. Riley, Doc. 45, PageID# 1784; Dec. Charron, Doc. 33, PageID#2045; Depo. Ziegler, Doc. 32, PageID#1890; Depo. Schrand, Doc. 42, PageID#2729-2733[2]; Depo. Frits, Doc. 47, PageID#3027-3029; Dec. Charron, Doc. 35, PageID#2216; Stewart Depo., Doc. 51, PageID#3421-3425.)

Appellees wrongly profess this case as factually similar to *Hussain v. Nicholson, as* instructive. 435 F.3d 359 (D.C.Cir.2006), where conduct was found not to constitute a hostile work environment including: a failure to be appointed as Chief of Radiation Therapy, (2) heightened monitoring by supervisors, (3) poor

---

[2] Officer Schrand's testimony was that even the Chief has made emergency runs without lights and sirens without consequence. *Id.*

performance evaluations, (4) delay in forwarding retirement application forms, (5) denial of counsel during a discussion about retirement and failure to provide a written copy of retirement options, (6) denial of access to his personnel file, (7) termination threats, and (8) failure to address misconduct by other employees. *Id* at 366. While Appellees point out this case as factually similar, they provide no analysis as to how, as neither the plaintiffs, nor the alleged discriminatory conduct, is even remotely similar. While Appellees claim oppressive scrutiny and discipline over every minor policy violation until termination does not constitute harassment, it is the very definition of death by a thousand cuts. Coupled with adverse job assignments, McNeal has offered more than enough evidence to raise issues of facts regarding the severe and pervasive double standard. (Doc. 42, Schrand Depo., p. 194, PageID#2880; Doc. 36, Charron Depo. Vol. II, p. 287, PageID#2359; Doc. 27, Depo. McNeal, at 74, 215-217, 252-258, PageID#667, 808-810, 845-851). McNeal was subjected to 2 years of repetitive, severe, humiliating, discipline and scrutiny that unreasonably interfered in his work performance. *Berryman v. SuperValu Holdings, Inc.*, 2010 WL 1257843, \*7 (SDOH 2010)*, quoting Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367 (1993).

Appellees deny the existence of a hostile work environment, insisting that the concentrated pattern of excessive discipline and unfair and demeaning job assignments directed toward older officers, including McNeal, was nothing more

than the "ordinary tribulations of the workplace," such that a reasonable person would not find such conduct to be hostile or abusive. But while Appellees speculate about the standards of a "reasonable person," this Court should focus on the actual observations and specific accounts in this record by the numerous current and retired officers and supervisors from the same department. Officers and supervisors testified that McNeal was subjected to a level of scrutiny that would be "difficult to survive" and was given tasks and scrutiny that were destined to fail. *Id.*

Given the breadth of evidence demonstrating a hostile and pervasive workplace, subjecting older employees to a double standard of work performance and discipline, summary judgment was improper.

## IV.  McNeal's State Law Age Discrimination Claim was Not Time-Barred.

Appellees argue McNeal's state law age discrimination claim is subject to a 180-day statute of limitations under the prior version of R.C. 4112.02(N). The evidence indicates that McNeal filed EEOC charges within the six-month period of his discharge. (Sec. Am. Compl., Doc. 12, PageID#155). And, because we deal here with a discharge, the six-year statute of limitations applies. *Taglione v. Charter Communs., LLC*, 842 Fed. Appx. 988 (6th Cir. 2021); *O'Donnell v. Univ. Hosps. Cleveland Med. Ctr.*, 833 Fed. Appx. 605 (6th Cir. 2020). Plaintiff made clear that he was proceeding under the 6-year statute of limitations below. (Doc. 55, PageID#3800-3802). That is an effective election of remedies. R.C. 4112.14(B)

26

provides for a remedy against an employer that is identical to the federal remedy. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998). Thus, because McNeal's federal claims were improperly dismissed, so were his state law claims. *Id. Cf. Romano v. Hudson City Sch. Dist.*, 772 Fed. Appx. 258 at fn6 (6th Cir. 2019) (explaining the murkiness of the law).

Appellees Noel and Waltz are not entitled to immunity under Ohio law. The record demonstrates that Chief Noel acted with malicious purpose and in bad faith when he favored younger officers and unlawfully discriminated against McNeal. He is therefore excluded from immunity under R.C. 2744.03(A)(6). Further, they can both be held liable under the plain language of R.C. 4112.02(J), because they aided, abetted, compelled, and coerced the discharge of the Plaintiff, and the evidence indicates that both were involved in making that decision. Thus, the claims against them were equally improperly dismissed. *Linkletter v. W. & S. Fin. Grp., Inc.*, 851 F.3d 632, 640-641 (6th Cir. 2017); *see, also, Argyriou v. David A. Flynn, Inc.*, 2021 U.S. Dist. LEXIS 36454 (N.D. Ohio Feb. 26, 2021).

## CONCLUSION

The District Court erred in granting Defendants' Motions for Summary Judgment, and its judgment should be reversed.

Respectfully submitted,

/s/Zach Gottesman_____
Zach Gottesman (KBA 86288)
404 East 12 St., First Floor
Cincinnati, OH 45202
zg@zgottesmanlaw.com
(513) 225-8997

/s/ Christopher Wiest_____
Christopher Wiest (OH 77931)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513/257-1895 (c)
chris@cwiestlaw.com

*Attorneys for Plaintiff/Appellant*

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing upon Counsel for the Defendants/Appellees, this 7 day of September, 2023, by filing same with the Court via its CM/ECF system, and by electronic mail upon Counsel for the Defendants/Appellees, which will provide notice to all parties Counsel.

/s/ Christopher Wiest_____

## CERTIFICATE OF COMPLIANCE

As required by Fed. R. App. P. 32(g) and 6th Cir. R. 32(a), I certify that this Appellants' Brief contains 6,412 words. This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Times New Roman font using Microsoft Word.

/s/ Christopher Wiest_____